TERRY SIMMONS AND JOE WILLOUGHBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE and MRS. GRISSOM'S SALADS, INC., Respondents
Simmons v. Commissioner
Docket No. 8512-93R.
United States Tax Court
T.C. Memo 1995-422; 1995 Tax Ct. Memo LEXIS 421; 70 T.C.M. (CCH) 558; August 28, 1995, Filed *421 A decision will be entered for respondents. Daniel P. Smith, for petitioners. C. Eric Stevens, for respondent Mrs. Grissom's Salads, Inc. Amy A. Campbell, for respondent Commissioner of Internal Revenue. HAMBLEN, Chief Judge HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: Respondent Commissioner of Internal Revenue issued a favorable determination letter stating that the termination of the Mrs. Grissom's Salads, Inc. Employee Pension Plan and Trust (the plan) would not affect the plan's qualified status under section 401(a). (Unless otherwise indicated, section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.) Terry Simmons and Joe Willoughby (petitioners) filed a Petition for Declaratory Judgment with this Court pursuant to section 7476(a) challenging respondent Commissioner's determination. Mrs. Grissom's Salads, Inc. (MGS), was joined as party/respondent to this case by order dated August 23, 1993. Rule 215(a)(2). Section 7476(a) provides that this Court may exercise jurisdiction over a declaratory judgment action if there is an actual controversy involving a determination by the Secretary *422 with respect to the initial or continuing qualification of a retirement plan or a failure by the Secretary to make a determination with respect to such initial or continuing qualification if the controversy arises from a plan amendment or plan termination. Loftus v. Commissioner, 90 T.C. 845, 855 (1988), affd. without published opinion 872 F.2d 1021 (2d Cir. 1989). Petitioners bear the burden of proving that the jurisdictional requirements of section 7476 have been met. Rule 217(c)(1)(A)(i); Halliburton Co. v. Commissioner, 98 T.C. 88, 94 (1992). The statutory prerequisites for this declaratory judgment action have been satisfied. Rule 210(c); see sec. 7476(b). Specifically, petitioners are former MGS employees with vested benefits under the plan who qualify as interested parties under section 7476(b)(1) and section 1.7476-1(b)(4), Income Tax Regs. In addition, the parties agree that petitioners exhausted their administrative remedies within the Internal Revenue Service. Sec. 7476(b)(3). Petitioners properly invoked the jurisdiction of this Court by timely filing their Petition for Declaratory *423 Judgment with respect to respondent Commissioner's final determination letter issued February 2, 1993. Sec. 7476(b)(5). At the time the Petition for Declaratory Judgment was filed, petitioner Terry Simmons resided in Hermitage, Tennessee, and petitioner Joe Willoughby resided in Mt. Juliet, Tennessee. At the time the Petition for Declaratory Judgment was filed, respondent MGS maintained its principal place of business in Nashville, Tennessee. Factual Background
This case was submitted to the Court for decision pursuant to Rule 122(a) based upon the pleadings and stipulated administrative record as defined in Rule 210(b)(10). For purposes of this proceeding, we accept the facts and representations contained in the administrative record as true and incorporate them herein by this reference. Rule 217(b)(1). Respondent MGS adopted a qualified defined benefit pension plan effective December 1, 1963. On December 23, 1987, respondent MGS restated and amended the plan by adopting the National Life Insurance Company Equity Services, Inc. Defined Benefit Pension Prototype Plan and Trust. The restatement and amendment, effective December 1, 1984, brought the plan into compliance with *424 various statutory requirements as set forth in the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, and the Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426. The amendment defines compensation as the amount that is subject to tax under section 3101(a) without the dollar limitation of section 3121(a), but not including deferred compensation other than contributions through a salary reduction agreement to a cash or deferred plan under section 401(k) or to a tax deferred annuity under section 403(b), and excluding overtime, bonuses, and commissions. Respondent Commissioner reviewed the restatement and amendment and issued a favorable determination letter dated May 12, 1988, stating that the amendment would not affect the plan's qualified status under section 401(a). The plan was further amended, effective as of the first day of the first plan year beginning after December 31, 1986, with the adoption of a model amendment for defined benefit plans intended to bring the plan into compliance with certain provisions contained in the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. *425 2085. Section V of the model amendment, entitled "CALCULATION OF PRESENT VALUE FOR CASH-OUT OF BENEFITS AND FOR DETERMINING AMOUNT OF BENEFITS" states in pertinent part: 5.2 Determination of Present Value. * * * * 5.2(a) For purposes of determining whether the present value of (i) a Participant's vested accrued benefit; (ii) a qualified joint and survivor annuity within the meaning of § 417(b) of the Code; or (iii) a qualified preretirement survivor annuity within the meaning of § 417(c)(1) of the Code exceeds $ 3,500, the present value of such benefits or annuities shall be calculated by using an interest rate no greater than the Applicable Interest Rate. 5.5 Applicable Interest Rate. 5.5(a) For purposes of this Section V, "Applicable Interest Rate" shall mean the interest rate or rates which would be used as of the date distribution commences by the Pension Benefit Guaranty Corporation for purposes of determining the present value of that Participant's benefits under the plan if the plan had terminated on the date distribution commences with insufficient assets to provide benefits guaranteed by the Pension Benefit Guaranty Corporation on that date.
Respondent MGS's board *426 of directors held a special meeting on April 21, 1992, and adopted a resolution to terminate the plan effective June 23, 1992. Respondent MGS resolved to terminate the plan in order to adopt a profit-sharing plan under section 401(k). On April 22, 1992, the plan administrator issued a Notice of Intent to Terminate and Cessation of Benefit Accruals to plan participants. On September 1, 1992, respondent MGS amended the plan, effective January 1, 1992, in two respects. First, the plan was amended to adopt Model Amendment I for Prototype Defined Benefit Plans for the purpose of conforming the plan with statutory requirements set forth in the Tax Reform Act of 1986, supra. In addition, the plan was amended to provide for the reallocation of any excess funds remaining after satisfaction of all plan liabilities to plan participants based on the present value of benefits as of the date of distribution. On September 14, 1992, respondent MGS filed with respondent Commissioner an Application for Determination Upon Termination (Form 5310), including as attachments a Form 6088 entitled "Distributable Benefits from Employee Pension Benefit Plans" and a written statement that the plan complies *427 with certain requirements of the Tax Reform Act of 1986. In addition to setting forth the vesting schedule for the plan, the latter document states: (1) All eligible employees are benefitting under the plan; (2) no optional form of benefit was removed from the plan; (3) benefit accruals for 1989 (including annual additions) are limited by a compensation cap of $ 200,000, with future accruals based on the appropriate cost-of-living index; (4) the plan is not integrated; (4) excess benefits will not be returned to the employer; and (5) the requirements of section 401(a)(11) regarding survivor annuities are satisfied. By letter dated October 23, 1992, petitioners' counsel submitted a comment letter to respondent Commissioner regarding respondent MGS's pending application. Sec. 601.201(o)(5), Statement of Procedural Rules. The comment letter includes allegations that: (1) The use of "base" compensation rather than "total" compensation for calculating benefits under the plan violates section 1.401-1(a)(2), Income Tax Regs.; (2) the use of "base" compensation rather than "total" compensation for calculating benefits under the plan results in discrimination in operation in violation of *428 section 401(a)(4) and section 1.401- 1(b)(3), Income Tax Regs.; [1] (3) the use of "base" compensation rather than "total" compensation for calculating benefits under the plan after 1986 violates section 414(s) which defines "compensation" for purposes of various nondiscrimination rules; (4) the 8 percent preretirement interest rate assumption used to calculate the present value of benefits under the plan violates sections 401(a)(11) and 417(e); and (5) respondent MGS disregarded its disclosure obligations under Title I of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829. By letter dated November 11, 1992, respondent MGS addressed several points raised in a letter from petitioners' counsel dated September 22, 1992. [2] The letter states that *429 the appropriate interest rates were used to compute each participant's benefits under the plan. With respect to petitioners' benefits, the letter states that the interest rate assumptions used were 6.5 percent during the deferral period to normal retirement and 5.0 percent for discounting postretirement benefits. By letter dated December 8, 1992, Steven W. Carrick, the revenue agent assigned to review respondent MGS's application for determination, forwarded a copy of petitioners' comment letter to respondent MGS and its accountants, Thornthwaite & Co. (Thornthwaite). By letter dated December 9, 1992, Revenue Agent Carrick requested that respondent MGS: (1) Amend the plan, effective to 1989, to comply with section 401(a)(17) and section 1.401(a)(17)-1, Income Tax Regs; (2) provide specific information for each plan participant for the years 1987 through 1992; [3] (3) explain the item identified as "participants contributions receivable" of *430 $ 34,220.65 listed on Form 5310, line 18(b)(2); (4) identify the income producing real estate valued at $ 30,000 on Form 5310, line 18(c)(7)(A); (5) amend the plan vesting schedule to comply with section 411(a)(2) as amended under the Tax Reform Act of 1986; (6) certify that any participant who terminated service subsequent to the effective date of the Tax Reform Act of 1986 was properly vested; (7) explain whether the 32 participants listed as "separated from service with deferred vested benefits" on Form 5310, line 14(f), were 100 percent vested with respect to their entire accrued benefit on the date of termination; (8) provide a completed "Demonstration 3" certified as to its correctness for plan years 1990, 1991, and 1992; (9) comment on items 1 through 5 listed in petitioners' comment letter; and (10) certify that the plan offers a qualified joint and survivor annuity. *431 By letter dated December 22, 1992, a copy of which was sent to Revenue Agent Carrick, petitioners' counsel responded to respondent MGS's letter dated November 11, 1992. With respect to respondent MGS's assurances that proper interest rate assumptions were utilized in computing the present value of plan benefits under section 417(e)(3), petitioners' counsel asserted that, contrary to respondent MGS's response, the assumed interest rate could fall below 5 percent with respect to lump sum benefits of less than $ 25,000. Petitioners' counsel further asserted that the plan violates section 411(d)(6) to the extent that the plan administrator is given discretion over the timing of posttermination predistributions over $ 3,500. In addition, petitioners' counsel requested information concerning the treatment of plan participants who separated from service with less than fully vested benefits during the period 1987 through 1992. On December 28, 1992, respondent MGS further amended the plan, effective January 1, 1989, to limit all compensation to be taken into account in calculating accrued benefits for any employee to no more than $ 200,000 (as adjusted) in a plan year and to provide for *432 full vesting for plan participants with 6 years of service. By letter dated December 29, 1992, Thornthwaite responded on behalf of respondent MGS to a number of the items set forth in Revenue Agent Carrick's letter dated December 9, 1992. With respect to Revenue Agent Carrick's request for a completed "Demonstration 3" certified as to its correctness for the years 1990, 1991, and 1992, Thornthwaite conceded that the plan does not satisfy the definition of compensation set forth in section 414(s) due to the fact that base compensation is used in determining benefits under the plan's benefit formula. Nonetheless, Thornthwaite performed general nondiscrimination testing under section 401(a)(4) for 1991 and found the plan to be nondiscriminatory. Thornthwaite represented that because the plan has been "top-heavy" since 1984, the plan also would pass general nondiscrimination testing for 1990 and 1992. By letter dated December 31, 1992, respondent MGS responded to that portion of Revenue Agent Carrick's letter dated December 9, 1992, requesting a reply to the various matters raised in petitioners' comment letter. Contrary to petitioners' position, respondent MGS asserted that plan benefits *433 were properly calculated using "base" compensation excluding overtime, bonuses, and commissions on the ground that the plan definition of compensation was sanctioned when respondent Commissioner approved the plan and adoption agreement in May 1988. Reiterating this point, respondent MGS likewise denied petitioners' contention that the plan is discriminatory in operation. In response to petitioners' allegation that the computation of benefits under the plan using "base" compensation excluding overtime, bonuses, and commissions violates section 414(s), respondent MGS attached a copy of the Thornthwaite report (described above) setting forth that firm's test of the plan showing the plan to be nondiscriminatory in respect of either coverage of employees or benefits provided. Further, although acknowledging that its Form 5310 contained a typographical error indicating that an interest rate assumption of 8 percent was used in computing the present value of benefits under the plan, respondent MGS went on to allege that the "correct interest rate assumptions were used as required by Section 203(e)(2) of ERISA and the instructions on the PBGC Form 500, Schedule EA-S 'Standard Termination/Certification *434 of Sufficiency' in the calculation of benefits for all participants in the Plan." Finally, respondent MGS flatly rejected petitioners' allegation that plan participants had been denied information with respect to the plan. By letter dated January 8, 1993, Thornthwaite advised Revenue Agent Carrick that respondent MGS agreed to increase the distribution amount (to reflect 100 percent vesting in lieu of partial vesting) for those plan participants who terminated their employment within the 5-year period immediately preceding the plan termination date. On February 2, 1993, respondent Commissioner issued a final favorable determination letter to respondent MGS stating that the plan termination would not adversely affect the plan's qualification for Federal tax purposes. On the same date, respondent Commissioner mailed separate copies of the determination letter to petitioners and their counsel. As indicated, petitioners filed a Petition for Declaratory Judgment with this Court seeking a ruling that respondent Commissioner erred in issuing a favorable determination letter with respect to the continuing qualification of the plan. The petition includes allegations that respondent Commissioner *435 erred as follows: (1) Respondent MGS failed to correctly compute its benefit obligations under the plan; [4] (2) respondent MGS's use of "base" compensation excluding overtime, bonuses, and commissions for calculating benefits under the plan results in discrimination in operation in violation of section 401(a)(4) and section 1.401-1(b)(3), Income Tax Regs.; (3) respondent MGS's use of "base" compensation excluding overtime, bonuses, and commissions for calculating benefits under the plan violates section 414(s); and (4) respondent MGS's use of an 8 percent preretirement interest rate assumption for calculating the present value of benefits under the plan violates sections 401(a)(1) and 417(e). *436 Respondent Commissioner and respondent MGS each filed an answer to the petition. Both respondent Commissioner and respondent MGS denied, inter alia, petitioners' contention that respondent MGS used an incorrect interest rate assumption in calculating the present value of benefits under the plan. In this regard, paragraph 8 of respondent Commissioner's answer includes the following allegations: ii. Denies that a 6.5% interest rate would necessarily be used under the Plan when calculating the present value of accrued benefits payable. Respondent alleges that under the Amendment for Defined Benefit Plan Under TRA '86, §§ 5.3 and 5.5, benefits are calculated in accordance with I.R.C. § 417(e)(3). iii. Admits. Respondent alleges that the sponsor has admitted that there is a typographical error on Form 5310 regarding the aforementioned interest rate and has made written representations that correct interest rate assumptions were used as required by Section 203(e)(2) of ERISA and the instructions on the Pension Benefit Guarantee Corporation Form 500, Schedule EA-S "Standard Termination/Certification of Sufficiency".
Petitioners' subsequently filed replies to the respondents' answers *437 including therein allegations that respondent MGS improperly failed to certify that the plan satisfies the general benefits test under section 401(a)(4) for 1990 and 1992 despite Revenue Agent Carrick's specific request for such a certification in his letter dated December 9, 1992. Petitioners further allege that nondiscrimination testing was necessary for 1990 in light of the allegation contained in petitioners' comment letter regarding a purported distribution in excess of $ 600,000 to Grace Grissom during that year. The case was subsequently submitted to the Court for decision pursuant to Rule 122(a) based upon the pleadings and stipulated administrative record as defined in Rule 210(b)(10). Each of the parties filed simultaneous opening briefs and simultaneous reply briefs. Petitioners' opening brief does not conform with Rule 151(e) which describes the form and content of briefs filed with this Court. [5] *439 In particular, petitioners' brief does not contain a table of contents, a list of citations, a statement of the issues to be decided, or proposed findings of fact in separate numbered paragraphs. In light of these defects, respondent MGS filed a Motion to Strike petitioners' *438 reply brief on the theory that, having failed to file a proper opening brief, petitioners would have to seek leave of Court to file a reply brief under Rule 151(b). [6] Petitioners filed a response in opposition to respondent MGS's motion asserting that respondent MGS did not suffer prejudice as the result of petitioners' imperfect opening brief. Considering all of the circumstances, it does not appear that respondent MGS was substantially prejudiced by the defects in petitioners' opening brief. Consequently, we shall deny respondent MGS's Motion to Strike petitioner's reply brief. [7]
On brief, petitioners argue that respondent erred in issuing a favorable determination letter in two respects. First, petitioners contend that respondent Commissioner erred by failing to require respondent MGS to demonstrate *440 that the plan satisfies the requirements of section 401(a)(4) and its underlying regulations for each of the years 1990 and 1992. [8] Second, petitioners contend that respondent Commissioner erred by permitting respondent MGS to calculate the present value of benefits under the plan by using an assumed interest rate in excess of that permitted under sections 401(a)(11) and 417(e). [9] Our declaration in this case is limited to these two issues. *441 Discussion
Section 7476(a) provides that this Court may make a declaration respecting the initial or continuing qualification of a retirement plan under section 401(a). It is well settled that this Court's jurisdiction under section 7476 is limited to declaring whether a plan is qualified under section 401(a) based upon the assumption that the facts represented in the administrative record are true. Rule 217(b)(1); Thompson v. Commissioner, 71 T.C. 32, 37-38 (1978); see S. Rept. 93-383 (1973), at 114, 1974-3 C.B. (Supp.) 80, 193. We have observed that the legislative history underlying section 7476 makes clear that Congress did not expect either the Internal Revenue Service during the administrative process or the Tax Court in a declaratory judgment action to make an independent examination of the facts to determine if the plan is qualified in operation. McManus v. Commissioner, 93 T.C. 79, 87 (1989); Stevens v. Commissioner, T.C. Memo. 1985-192; H. Rept. 93-807 (1974), at 107-108, 1974-3 C.B. (Supp.) 236, 342-343. Stated differently, *442 section 7476 does not provide a broad grant of authority to the Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies. Rather, we must determine whether the Commissioner erred in granting a favorable determination letter based on the information presented during the administrative process. Thompson v. Commissioner, supra at 37-38; H. Rept. 93-807, at 108, 1974-3 C.B. (Supp.) 236, 343. With the foregoing in mind, we turn to the question of whether respondent Commissioner erred in issuing a favorable determination letter in the instant case. As indicated, petitioners' initial contention is that respondent Commissioner erred in issuing a favorable determination letter without first requiring respondent MGS to demonstrate that the plan satisfies the requirements of section 401(a)(4) and its underlying regulations for each of the years 1990, 1991, and 1992 as requested by Revenue Agent Carrick in his letter to respondent MGS dated December 9, 1992. The administrative record in this case shows that respondent MGS had its accountants, *443 Thornthwaite & Co., respond to Revenue Agent Carrick's request to provide a completed "Demonstration 3" certified as to its correctness for plan years 1990, 1991, and 1992. Thornthwaite responded to this particular request by letter dated December 29, 1992. In particular, while conceding that the plan does not satisfy the definition of compensation set forth in section 414(s) due to the fact that base compensation is used in determining benefits under the plan's benefit formula, Thornthwaite performed general nondiscrimination testing under section 401(a)(4) for 1991, and found the plan to be nondiscriminatory. Thornthwaite represented to respondent Commissioner that because the plan had been "top-heavy" since 1984, the plan would pass general nondiscrimination testing for 1990 and 1992 as well. Contrary to petitioners' view of the matter, we are unable to conclude that respondent Commissioner erred in issuing a favorable determination letter on the ground stated. While Revenue Agent Carrick originally directed respondent MGS to provide a completed "Demonstration 3" certified as to its correctness for plan years 1990, 1991, and 1992, respondent Commissioner obviously was satisfied *444 with Thornthwaite's report setting forth its conclusions that the plan was nondiscriminatory for 1991, as well as Thornthwaite's representation that the plan would pass general nondiscrimination testing for 1990 and 1992. Obliged as we are to accept these representations as true, Thompson v. Commissioner, supra at 37, and given the factual nature of the question whether a plan is nondiscriminatory, see E.F. Higgins & Co. v. Commissioner, 74 T.C. 1029, 1042 (1980), we have no basis in law or fact for overruling respondent Commissioner's determination respecting the plan's qualified status. Petitioners contend in the alternative that respondent Commissioner erred in issuing a favorable determination letter on the ground that respondent MGS calculated the present value of benefits under the plan by using an assumed interest rate in excess of that permitted under sections 401(a)(11) and 417(e). The record shows that respondent MGS acknowledged that its Form 5310 included a typographical error to the extent it reported that an interest rate assumption of 8 percent was used in computing the present value of benefits under *445 the plan. By letter dated November 11, 1992, respondent MGS advised petitioners' counsel that the appropriate interest rates were used to compute each participant's benefits under the plan. With respect to petitioners' benefits, the letter states that the interest rate assumptions used were 6.5 percent during the deferral period to normal retirement and 5.0 percent for discounting postretirement benefits. Finally, by letter dated December 31, 1992, respondent MGS represented to respondent Commissioner that the "correct interest rate assumptions were used as required by Section 203(e)(2) of ERISA and the instructions on the PBGC Form 500, Schedule EA-S 'Standard Termination/Certification of Sufficiency' in the calculation of benefits for all participants in the Plan." Based on the record presented, we are not convinced by petitioners' argument that respondent Commissioner erred in issuing a favorable determination letter. While the record is not clear as to the particular interest rate assumptions used in the computation of the present value of benefits under the plan, it appears that respondent Commissioner accepted respondent MGS's final representation that "the correct interest *446 rate assumptions were used * * * in the calculation of benefits for all participants in the Plan." Although petitioners obviously find respondent MGS's response unacceptable, we can find no fault with respondent Commissioner's determination which is based solely on the information submitted and not upon an independent investigation of the facts. See Oakton Distrib., Inc. v. Commissioner, 73 T.C. 182, 194 (1979), and cases cited therein. In sum, petitioners have not demonstrated to this Court's satisfaction that respondent Commissioner's determination is erroneous. Sutherland v. Commissioner, 78 T.C. 395, 405 (1982). [10] It follows that petitioners are not entitled to the judgment that they seek. *447 To reflect the foregoing. A decision will be entered for respondents. Footnotes
1. While admittedly lacking specific information on the point, petitioners referred to a purported distribution in excess of $ 600,000 to respondent MGS's president, Grace Grissom, as evidence that the plan is discriminatory in operation.↩
2. The letter dated Sept. 22, 1992, is not part of the record in this case.↩
3. The information requested included the participant's name, date of hire, date of participation, date of and reason for severance, account balance or accrued benefit at severance, vested percentage at severance, total hours of service worked during the year of severance, and date of payment of the vested accrued benefit.↩
4. Petitioners argue that respondent MGS's calculation of benefits is incorrect on the ground that the definition of compensation used in computing those benefits conflicts with the definition of compensation communicated to plan participants in the Summary Plan Description. By order dated July 13, 1994, we granted respondent Commissioner's motion to strike all allegations pertaining to the Summary Plan Description on the ground that said document is not contained in the stipulated administrative record.↩
5. Rule 151(e) states in pertinent part: (e) Form and Content: All briefs shall contain the following in the order indicated: (1) On the first page, a table of contents with page references, followed by a list of all citations arranged alphabetically as to cited cases and stating the pages in the brief at which cited. Citations shall be in italics when printed and underscored when typewritten. (2) A statement of the nature of the controversy, the tax involved, and the issues to be decided. (3) Proposed findings of fact (in the opening brief or briefs), based on the evidence, in the form of numbered statements, each of which shall be complete and shall consist of a concise statement of essential fact and not a recital of testimony nor a discussion or argument relating to the evidence or the law. In each numbered statement, there shall be inserted references to the pages of the transcript or the exhibits or other sources relied upon to support the statement. In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact. (4) A concise statement of the points on which the party relies. (5) The argument, which sets forth and discusses the points of law involved and any disputed questions of fact. (6) The signature of counsel or the party submitting the brief. * * *↩
6. Respondent Commissioner declined to join in the filing of the Motion to Strike.↩
7. We will nevertheless take this opportunity to remind petitioners' counsel that the Court's Rules of Practice and Procedure are intended to promote fairness and order in the presentation of an action brought in this Court. In this regard, petitioners' counsel is admonished that future derelictions of the sort present in this case may be met with the imposition of an appropriate sanction.↩
8. Sec. 401(a)(4)↩ provides in pertinent part that a trust forming part of a pension plan shall constitute a qualified trust if the contributions or benefits provided under a plan do not discriminate in favor of highly compensated employees.
9. Sec. 401(a)(11) provides in pertinent part that a trust forming part of a pension plan shall not constitute a qualified trust unless the plan provides for payment of benefits in the form of a qualified joint and survivor annuity or a qualified preretirement annuity. Sec. 417(e)(3)(A)(i) in turn provides that for purposes of calculating the present value of a qualified joint and survivor annuity or a qualified preretirement annuity an interest rate no greater than the "applicable interest rate" shall be used if the vested accrued benefit is not in excess of $ 25,000. The term "applicable interest rate" is defined in sec. 417(e)(3)(B)↩ as the interest rate which would be used by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.
10. We observe that the issues raised by petitioners primarily involve the proper computation of their benefits under the plan. While this Court generally lacks jurisdiction over allegations relating to operational defects in a retirement plan, Thompson v. Commissioner, 71 T.C. 32, 37 (1978), pension plan participants such as petitioners are provided various remedies under Title I of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, including the right to bring a cause of action in Federal District Court or State court to enforce rights under a plan. See 29 U.S.C. sec. 1132(a)(1), (e)(1) (1988)↩. Consequently, petitioners' remedy, if any, appears to lie elsewhere.