T.C. Memo. 2011-62

UNITED STATES TAX COURT

CHRISTY & SWAN PROFIT SHARING PLAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23853-09X.          Filed March 15, 2011.

David S. Swan, Jr. (trustee), for petitioner.

<u>Kelly C. Scanlon</u>, for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  Because petitioner's plan provisions were not
amended to conform to statutory requirements, respondent
retroactively revoked petitioner's tax-exempt status as a
qualified profit-sharing plan under section 401(a)[1] for 2001 and

_____

[1]Unless otherwise indicated, all section references are to
                                        (continued...)

subsequent years.  Petitioner seeks declaratory judgment relief as to the qualifying status of the plan.  Respondent moves under Rule 121 for summary judgment.

## Background

In Florida in the early 1970s David S. Swan, Jr., began a real estate business under the name David S. Swan, Jr., P.A. (Swan P.A.).[2]  On January 1, 1976, Swan P.A. established the Christy & Swan Profit Sharing Plan (the plan), petitioner herein. Swan P.A. is the employer-sponsor and administrator of the plan. For the years in issue Mr. Swan was the only participant and also served as trustee of the plan.

On September 24, 1986, respondent issued a favorable determination letter concluding that the plan was a qualified tax-exempt retirement plan under section 401(a).

During 2000 and 2001 Congress enacted a number of changes relating to qualified retirement plans in the Community Renewal Tax Relief Act of 2000 (CRA), appendix G of the Consolidated Appropriations Act, 2001, Pub. L. 106-554, 114 Stat. 2763 (2000),

---

[1](...continued)
the Internal Revenue Code (Code) applicable to the years before us, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner's principal office was located in Florida at the time of filing the petition.

and the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), Pub. L. 107-16, 115 Stat. 38.[3]

On March 21, 2006, the plan filed its Form 5500-EZ, Annual Return of One-Participant (Owners and Their Spouses) Retirement Plan, for its 2005 plan year.

Before the initiation of respondent's audit of petitioner in June 2007, the plan was not amended to comply with any of the requirements of the above-referenced statutory amendments.

On June 8, 2007, respondent began his examination of petitioner's Form 5500-EZ for 2005.

On August 21, 2007, Mr. Swan, as trustee, signed and provided to respondent a "Declaration" in which petitioner stated generally that the plan was "amended" by general reference to incorporate all statutory and regulatory amendments necessary to retain qualified status under section 401(a).[4]

_____

[3]The specific changes to qualified retirement plans required by these statutory amendments are described in some detail _infra_.

[4]Mr. Swan's August 21, 2007, Declaration stated as follows:

 Effective January 1, 1984 and extending indefinitely into the future, this Plan hereby accepts unconditionally any and all revisions, modifications, changes, deletions, additions, terminations, and other alterations that the Department of the Treasury may assess against this Plan with or without notification in any manner to the Trustee of the Plan.  Any such revisions, modifications, changes, deletions, additions, terminations, and other alterations will automatically become an integral part of this plan with an effective date equal to the required effective
(continued...)

On August 30, 2007, respondent sent petitioner a Form 886-A, Explanation of Items, which stated that in respondent's opinion the plan had not been amended to reflect required statutory changes. Respondent also explained his closing agreement program.[5]

On September 18, 2007, Mr. Swan on behalf of petitioner sent respondent a letter in which he asserted that the plan had ceased to exist and that the plan had matured into a "Repository Trust", having discontinued contributions and the admission of new participants. Mr. Swan stated in his letter to respondent: "As such, any subsequent rules or laws applicable to profit sharing

_____

[4](...continued)
date of any such revisions, modifications, changes, deletions, additions, terminations, and other alterations required.

[5]Respondent described the closing agreement program as follows:

A plan sponsor that does not come forward to the IRS, but which instead is discovered on audit to have significant problems in its plan, is entitled under the audit correction program to preserve the tax benefits associated with properly maintained retirement plans. Under this program, the plan sponsor pays a reasonable sanction that is based on an amount that is directly related to the amount of tax benefits preserved. The sanction imposed will bear a reasonable relationship to the nature, extent and severity of the failure, taking into account the extent to which correction occurred before audit.

See Rev. Proc. 2008-50, 2008-35 I.R.B. 464. Petitioner did not participate in respondent's closing agreement program.

plans are not applicable as this Plan ceased to be a Profit Sharing Plan as of 1/1/01."

On September 28, 2007, respondent sent to petitioner a revised Form 886-A, which stated that the plan had failed to timely amend consistent with the above-referenced statutory requirements. In this letter respondent once again explained the closing agreement program. Again, Mr. Swan informed respondent that the plan would not be participating in the closing agreement program.

On December 20, 2007, respondent mailed petitioner a letter stating that petitioner's case would be closed with the unagreed revocation of the plan's tax-exempt status as a qualified profit-sharing plan under section 401(a).

On December 26, 2007, Mr. Swan sent respondent a letter in which he, as trustee of the plan, stated his intent to abandon all future discussions with respondent regarding the tax-exempt qualified status of the plan and to take the issue to court.

On July 9, 2009, respondent sent Mr. Swan a letter informing Mr. Swan that disqualification of the plan was necessary because the plan had failed to timely amend regardless of whether the plan still permitted contributions or admission of new participants.

On July 24, 2009, respondent sent to Mr. Swan a final revocation letter with regard to the plan's tax-exempt status.

This letter was returned to respondent unclaimed by Mr. Swan or by petitioner.[6]

On August 17, 2009, Mr. Swan on behalf of petitioner sent respondent a letter explaining that the plan was so simple that any new statutory requirements could not possibly affect or be applicable to the plan.

On September 16, 2009, respondent sent a second final revocation letter to Mr. Swan as trustee of the plan stating that the plan's qualified status for the plan year ending December 31, 2001, and for subsequent years was revoked.

On October 6, 2009, petitioner filed the petition herein seeking a declaratory judgment that the plan had not lost its status as a qualifying plan under section 401(a).

## Discussion

Summary judgment may be an appropriate method for resolving a declaratory judgment action. Rule 217(b)(2). When no material fact remains at issue, we may grant summary judgment as a matter of law. Rule 121(b); Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 75-76 (2004), affd. on other grounds 404 F.3d 1291 (11th Cir. 2005).

---

[6]Petitioner argues that because respondent's July 24, 2009, letter was not sent to the plan or to Mr. Swan in his capacity as a trustee thereof, the letter was defective. We address this issue in greater detail infra.

The party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). All facts are viewed in the light most favorable to the nonmoving party. Id. Where, however, a motion for summary judgment has been properly made and supported, the opposing party may not rest upon mere allegations or denials but must by affidavits or otherwise set forth specific facts showing that there is a genuine issue for trial. Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Sundstrand Corp. v. Commissioner, supra at 520.

The burden of establishing the nonexistence of a genuine factual issue is on the party moving for summary judgment; and where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, we will deny summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Robinson v. Commissioner, T.C. Memo. 2005-70.

Section 401(a) sets forth the requirements that must be met by a trust forming part of a profit-sharing plan in order for the trust to be eligible for favorable tax treatment. Section 7476(a) confers jurisdiction on this Court to issue declaratory judgments as to the initial and continuing qualification of a retirement plan under section 401(a). In a declaratory judgment action, we are limited to deciding whether respondent, in making

a determination as to the initial or continuing qualification of a retirement plan under section 401(a), properly applied the relevant law to the facts presented. Stepnowski v. Commissioner, 124 T.C. 198, 204 (2005), affd. 456 F.3d 320 (3d Cir. 2006); Thompson v. Commissioner, 71 T.C. 32, 36-37 (1978); see also Simmons v. Commissioner, T.C. Memo. 1995-422 (noting that section 7476 "does not provide a broad grant of authority to the Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies").

Respondent has broad discretion under section 7805(b) to revoke a ruling retroactively, and his determination is reviewable by the courts only for abuse of discretion. Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 184 (1957); Va. Educ. Fund v. Commissioner, 85 T.C. 743, 752 (1985), affd. 799 F.2d 903 (4th Cir. 1986). With regard to retroactive revocation of a prior favorable ruling, respondent has stated as follows:

> (5) Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance

> upon the ruling and the retroactive revocation would be
> to his detriment. * * *

Sec. 601.201(l)(5), Statement of Procedural Rules (emphasis added).

In this case, respondent's basis for retroactively revoking the plan's qualifying status under section 401(a) is that the plan was not amended to incorporate statutory requirements enacted during 2000 and 2001.

Petitioner raises five arguments, which we discuss below.

Timeliness

Petitioner argues that respondent's September 16, 2009, letter was not timely.[7] Petitioner claims that the "statute of limitations" for the plan's 2005 year expired on July 31, 2009,[8] and that respondent therefore was barred from revoking the plan's tax-exempt status for 2005 and earlier plan years. Petitioner's argument is without merit.

---

[7]For the limited purpose of petitioner's timeliness contention, we assume arguendo that respondent's July 24, 2009, final revocation letter was, as petitioner asserts, defective and thus void.

[8]July 31, 2009, is 3 years after petitioner's 2005 Form 5500-EZ was due. Generally, a Form 5500-EZ must be filed by the last day of the seventh calendar month after the end of the plan year. Petitioner's 2005 plan year ended on Dec. 31, 2005. Without extensions, the last day to file the plan's 2005 Form 5500-EZ was July 31, 2006.

The period of limitations prescribed by section 6501(a)[9] is a limitation on the assessment and collection of taxes; it does not limit respondent's broad authority to audit retirement plans and, if appropriate, to revoke retroactively a favorable determination letter. The period of limitations prescribed by section 6501(a) is applicable neither to proceedings under section 7476 nor to respondent's determinations regarding the continued qualification of retirement plans under section 401(a), as they do not involve the imposition of any tax.[10] Yarish Consulting, Inc. v. Commissioner, T.C. Memo. 2010-174; Roblene, Inc. v. Commissioner, T.C. Memo. 1999-161. Accordingly, respondent's revocation action was not improper by operation of any period of limitations.

Incorrect Information

Petitioner asserts that exhibits 14 and 15 attached to respondent's motion for summary judgment (purporting to represent petitioner's 2006 and 2005 Forms 5500-EZ, respectively) are

---

[9]Sec. 6501(a) provides in part: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

[10]There are five jurisdictional limitations set forth in sec. 7476(b) restricting this Court's authority to make declaratory judgments. All five jurisdictional requirements have been met in this case.

"frauds" and that any revocation action by respondent based thereon must be erroneous. We disagree.

Exhibits 14 and 15 attached to respondent's motion for summary judgment are identical to Exhibits 14-R and 15-R, respectively, of the administrative record filed herein. Generally, the facts represented in an administrative record are assumed to be true. Rule 217(b); Romann v. Commissioner, 111 T.C. 273, 274 (1998). Petitioner offers no evidentiary support for the contention that respondent's exhibits are fraudulent or incorrect. Mere allegations by the taxpayer are insufficient to show the existence of a genuine issue for trial. Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. at 324; Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

Rev. Rul. 69-157, 1969-1 C.B. 115

Petitioner argues that notwithstanding its failure to timely amend for statutory changes, the plan retained its qualified status pursuant to Rev. Rul. 69-157, supra.

This revenue ruling addresses the issue of whether a trust retains its exempt status where a plan has discontinued contributions but otherwise continues in effect until all assets have been distributed from the plan's trust. This ruling does not address the issue of a plan's qualified status where a plan has failed to timely amend as required by statutory changes. Petitioner's reliance on Rev. Rul. 69-157, supra, is misplaced.

Repository Trust

Petitioner argues that because the plan in 2001 discontinued receiving contributions and barred admission of new participants, the plan ceased to exist and thereafter matured into a "Repository Trust". What petitioner means by the term "Repository Trust" is not clear;[11] however, we believe petitioner argues that the plan terminated in or around 2001 and therefore was not required to amend for the above-referenced statutory enactments. We disagree.

Retirement plan terminations are formal events that have distinct requirements. Notably, formal plan terminations require that termination dates be established, the benefits of plan participants (and other liabilities under the plans) be determined with respect to the termination date, and all plan assets be distributed to satisfy those liabilities in accordance with the terms of the plan as soon as administratively feasible after the termination date. Rev. Rul. 89-87, 1989-2 C.B. 81. Petitioner offers no evidence to show that the plan has been formally terminated, and petitioner's reliance on the allegation that the plan discontinued receiving contributions and barred admission of new participants thereby causing a termination of

---

[11]Respondent suggests that petitioner is referring to a "wasting trust" or a trust that remains in effect after a plan has been terminated for the purpose of distributing plan assets. See, e.g., Rev. Rul. 89-87, 1989-2 C.B. 81.

the plan is insufficient to create a genuine issue for trial. See Rule 121(d); <u>Celotex Corp. v. Catrett</u>, <u>supra</u> at 324; <u>Sundstrand Corp. v. Commissioner</u>, <u>supra</u> at 520.

Termination of a retirement plan will always cause a discontinuance of contributions, but a discontinuance of contributions might occur without a formal termination of the plan. <u>Tionesta Sand & Gravel, Inc. v. Commissioner</u>, 73 T.C. 758, 762 (1980), affd. without published opinion 642 F.2d 444 (3d Cir. 1981). As noted above, Rev. Rul. 69-157, <u>supra</u>, provides that a trust which is part of a qualified plan--and has not been formally terminated--<u>may</u> retain its tax-exempt status despite the fact that contributions have been discontinued. Because no formal termination occurred, the plan was still required to comply with the requirements of section 401(a) in order for the plan to be eligible for continued favorable tax treatment.

<u>No Meaningful Purpose</u>

Respondent's basis for retroactively revoking the plan's qualifying status under section 401(a) is that the provisions of the plan were not amended to conform to certain changes in applicable law. Petitioner has admitted this failure. Petitioner argues, however, that because the plan was so simple, there was no need to amend the plan for statutory changes that would have had no effect on the operation of the plan. According

to petitioner, any amendments to the plan would have had no meaningful purpose.  We disagree with petitioner.

A qualified profit-sharing plan must meet statutory requirements both by its terms and in its operations.  Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 646 (1989).  The evaluation of the plan's failure to amend to meet statutory changes must be made in the context of what might have happened, not what actually occurred, during the years in issue.  Basch Engg. Inc. v. Commissioner, T.C. Memo. 1990-212.  In that context, we review briefly the amendments to the plan that were required by the above-referenced statutory changes.

The Community Renewal Tax Relief Act of 2000

CRA was enacted on December 21, 2000.[12]  CRA sec. 314(e), 114 Stat. 2763A-643, amended, inter alia, section 415(c)(3)(D) of the Code to require that a plan broaden its definition of compensation to include qualified transportation fringe benefits under section 132(f).  The plan was never amended to include qualified transportation fringe benefits described in section 132(f) as required by the CRA.[13]  The fact that no such fringe

---

[12]This amendment had retroactive effect, relating back to the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 788.

[13]The plan provided:

1.19 "415 Compensation" with respect to any Participant means such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation

(continued...)

benefits were provided by Swan P.A. does not cure this defect. "[T]he fact that the defective plan provision did not become operative does not mean that the plan meets the [statutory] requirements". Tionesta Sand & Gravel, Inc. v. Commissioner, supra at 764. It is possible that during the years in issue Swan P.A. could have provided qualified transportation fringe benefits to its employee(s) under section 132(f), and these benefits would have to have been included in the plan's definition of compensation.

---

[13](...continued)
by the Employer (in the course of the Employer's trade or business) for a Calendar Year ending with or within the Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052. "415 Compensation" must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)).

For Plan Years beginning after December 31, 1997, for purposes of this Section, the determination of "415 Compensation" shall include any elective deferral (as defined in Code Section 402(g)(3)), and any amount which is contributed or deferred by the Employer at the election of the Participant and which is not includible in the gross income of the Participant by reason of Code Sections 125 or 457.

If, in connection with the adoption of this amendment and restatement, the definition of "415 Compensation" has been modified, then, for Plan Years prior to the Plan Year which includes the adoption date of this amendment and restatement, "415 Compensation" means compensation determined pursuant to the Plan then in effect.

The Economic Growth and Tax Relief Reconciliation Act of 2001

EGTRRA was enacted on June 7, 2001.[14]  EGTRRA secs. 641(a)(1)(A) and (b)(2), 115 Stat. 118, 120, required qualified plans to amend their definition of an eligible retirement plan to include eligible deferred compensation plans under section 457(b) and annuity contracts under section 403(b), respectively.  The plan's definition of eligible retirement plan was never amended to include annuity contracts or eligible deferred compensation plans.[15]  The fact that no such annuity contracts or eligible

---

[14]This amendment applies to distributions occurring after Dec. 31, 2001.  EGTRRA sec. 641(f)(1), 115 Stat. 121.

[15]The plan provided:

7.11 DIRECT ROLLOVER--(a) Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an eligible rollover distribution that is equal to at least $500 paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(b) For purposes of this Section the following definitions shall apply:

(1) An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of--a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such

(continued...)

deferred compensation plans were part of the plan during the years in issue does not cure this defect in the plan.

EGTRAA sec. 657(a)(1), 115 Stat. 135, amended section 401(a)(31) of the Code by adding subparagraph (B) requiring that mandatory distributions greater than $1,000 but less than $5,000 from a qualified plan be paid in a direct rollover to an individual retirement plan if the distributee fails to make a distribution election and that the plan administrator provide the

_____

[15](...continued)
distribution is required under Code Section 401(a)(9); the portion of any other distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and any other distribution that is reasonably expected to total less than $200 during a year.

(2) An eligible retirement plan is an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified trust described in Code Section 401(a), that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(3) A distributee includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p), are distributees with regard to the interest of the spouse or former spouse.

(4) A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

distributee written notice thereof.[16]  A review of the plan shows no inclusion of either the automatic rollover provision or the notice provision required by amended section 401(a)(31)(B).

### Conclusion

The requirements that a plan must satisfy for qualification under section 401(a) must be strictly met.  Vague, general references in plan correspondence to such requirements are insufficient.  "Congress has decided that these changes are necessary in the retirement plan area and we do not second guess its wisdom."  Hamlin Dev. Co. v. Commissioner, T.C. Memo. 1993-89.

Reviewing the facts in the light most favorable to petitioner, we conclude that no genuine issue of material fact exists requiring a trial, and that, as a matter of law, respondent is entitled to summary judgment.

---

[16]This amendment applies to distributions occurring after Mar. 28, 2005.  EGTRRA sec. 657(d), 115 Stat. 137, provides: "The amendments made by this section shall apply to distributions made after final regulations implementing subsection (c)(2)(A) are prescribed."  The regulations referenced in EGTRRA sec. 657(c)(2)(A), 115 Stat. 137, relate to safe harbor provisions promulgated by the Department of Labor (DOL) pertaining to sec. 401(a)(31)(B) of the Code.  These DOL regulations were issued on Sept. 28, 2004, and became effective on Mar. 28, 2005.  See 29 C.F.R. sec. 2550.404a-2(e) (2005).

In reaching our decision, we have considered all of the arguments raised by petitioner, and to the extent not mentioned herein, we conclude they are moot, irrelevant, or without merit.

<u>An appropriate order and decision will be entered for respondent</u>.