IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 99-40520

BRENDA MYERS-GARRISON,

Plaintiff-Appellant,

versus

JOHNSON & JOHNSON, JOHNSON &
JOHNSON HOSPITAL SERVICES
INCORPORATED; THE CONSOLIDATED
RETIREMENT PLAN OF JOHNSON & JOHNSON
AND AFFILIATED COMPANIES; ROBERT
DARRETTA; EFREM B. DLUGACZ; ROGER S. FINE;
ROGER S. HEISEN,

Defendants-Appellees.

Appeal from the United States District Court
For the Eastern District of Texas

April 18, 2000

Before HIGGINBOTHAM and PARKER, Circuit Judges, and JACK,[*] District
Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Brenda Myers-Garrison brought this nationwide class action on
behalf of Johnson & Johnson employees, alleging that their pension
benefits were reduced in violation of the Employee Retirement
Income Security Act ("ERISA"). Myers-Garrison appeals the district
court's granting of summary judgment for Johnson & Johnson based on
its conclusion that the retirement plan was exempted from ERISA's
protections against reductions by the Retirement Protection Act.
We agree with Myers-Garrison that the Retirement Protection Act

---

[*]District Judge of the Southern District of Texas, sitting by
designation.

does not exempt the plan changes allegedly made here. Finding that only some of the class members may have experienced reduced benefits, however, we vacate and remand for further proceedings.

I

This class action arises out of changes Johnson & Johnson made to its defined benefits pension plan. Initially, section 6.01(c) of the plan provided for a mandatory lump sum distribution to vested employees whose total benefits were equal to or less than $3,500 and whose annual payment would be less than $80. The discount rate was calculated using the Pension Benefit Guaranty Corporation ("PBGC") rate in effect in the month the benefits were distributed. Employees with benefits greater than those limits received benefits under an annual benefit plan.

In 1994, Congress passed the Retirement Protection Act, which incorporated provisions of the General Agreement on Tariffs and Trade ("GATT") treaty. The RPA amended provisions of ERISA and the Internal Revenue Code that specify that an employer must calculate a lump sum payment using an applicable mortality table and a discount rate. The RPA changed what interest rate employers could use as the discount rate from the PBGC rate to the rate of interest on 30-year Treasury securities (the "GATT rates"). This change offered a financial benefit to employer pension plans by allowing them to discount at higher rates.

In 1995, Johnson & Johnson took advantage of the change by amending its plan. On a one-time basis, Johnson & Johnson offered lump sum distribution to vested employees who had terminated their

employment before January 1, 1995, were under 55 upon termination, and whose total benefits would be equal to or less than $50,000. Those employees whose benefits totaled between $3,500 and $50,000 could choose between a lump sum and the normal annual benefits (the "optional class members"); those whose benefits were under $3,500 were subject to a mandatory lump sum benefit (the "mandatory class members"). Because the amendment did not include the under-$80 requirement of the old section 6.01(c), the mandatory class potentially included both members who would have received lump sum distributions under 6.01(c) and others who formerly would have received an annual benefit.

In December 1995, 3,730 employees received distributions through the program: 1,736 under the mandatory provision, and 1,994 on an optional basis. Rather than using the discount rate effective during the month of distribution, Johnson & Johnson applied the GATT rate in effect in November 1994, two months prior to the beginning of the plan year. This rate, 8.08 percent, was significantly higher than the GATT rates in subsequent months.

Myers-Garrison and other employees later brought suit under § 1132(a)(3) of ERISA, arguing that their benefits had been reduced in violation of ERISA's provisions that protect employees from reductions to accrued benefits. The court certified the former employees as a national class under Fed. R. Civ. P. 23(b)(1) and (b)(3). On cross-motions for summary judgment, the district court granted summary judgment to Johnson & Johnson. The court held that

3

the changes in the discount rate were statutorily exempted under the Retirement Protection Act. Myers-Garrison appealed.

## II

We first consider whether the Retirement Protection Act exempts Johnson & Johnson from the reaches of ERISA. ERISA's prohibition on benefit reductions, called the "anti-cutback rule," provides:

> (6) <u>Accrued benefit not to be decreased by amendment.</u>--
>     (A) <u>In general</u>.--A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan, other than an amendment described in section 412(c)(8), or section 4281 of the Employee Retirement Income Security Act of 1974.
>
>     (B) <u>Treatment of certain plan amendments</u>.--For purposes of subparagraph (A), a plan amendment which has the effect of –
>         (i) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in the regulations), or
>         (ii) eliminating an optional form of benefit,
>
> . . . shall be treated as reducing accrued benefits. . . .[2]

A plan's change to a higher discount rate would decrease benefits, which would normally trigger the rule. Section 767(d)(2) of the RPA, however, allows an employer to switch from the PBGC to the GATT rates without running afoul of the anti-cutback rule:

> A participant's accrued benefit shall not be considered to be reduced in violation of section 411(d)(6) of the [IRC] . . . merely because the benefit is determined [according to the new interest rates].[3]

---

[2]I.R.C. § 411(d)(6) (1999).

[3]Retirement Protection Act of 1994, § 767(d)(2), Pub. L. No. 103-465, 108 Stat. 5012 ("RPA").

Myers-Garrison argues that the RPA's permission to change to GATT rates did not address changes in what month's interest rate was applied. Johnson & Johnson not only switched to GATT rates but changed the month used to determine which interest rate would apply.

Treasury regulations addressed the transitional problem of which month's GATT rate employers could use in switching from PBGC rates. As these regulations went into effect as temporary regulations on April 5, 1995, they were operative upon Johnson & Johnson's amendment.[4] The regulations give the employer several options about which month may be used.[5] The employer may permanently adopt the applicable interest rate for the first full month preceding the annuity starting date,[6] the interest rate for the month the old rate was determined,[7] or one or two months immediately preceding that date.[8] Here, the month preceding the annuity was November 1995; the old rate would have been determined using the December 1995 rate; and the two months preceding that date were October and November 1995. The effective rates in October, November and December 1995 were 6.37%, 6.26%, and 6.06%, respectively.

---

[4]See 60 Fed. Reg. 17219 (1995).

[5]See Treas. Reg. § 1.417(e)-1(d)(10) (1999).

[6]See § 1.417(e)-1(d)(10)(iii)(B).

[7]See § 1.417(e)-1(d)(10)(iv)(B).

[8]See id.

5

Alternatively, the employer may apply special rules for the first year in which the amendment is in effect. The employer may give the transition-period employees the larger distribution of: (1) either the interest rate on the date one or two months before the date used prior to the amendment, or the date provided under the terms of the amended plan;[9] or (2) the larger distribution based either on the interest rate on the date the old interest rate would have been calculated, or the date provided under the terms of the amended plan.[10] Under these rules, Johnson & Johnson would have offered the more favorable rate between October or November 1995 and November 1994 or the better rate between December 1995 and November 1994. Thus, these rules also would have limited Johnson & Johnson to choosing the rate effective in October, November or December of 1995, not the higher November 1994 rate.[11]

Johnson & Johnson urges us to disregard the Treasury regulation as contrary to the plain language of the RPA. The regulation, however, is promulgated pursuant to the IRS's implementing authority and thus is subject to Chevron deference. Under that standard, it is not contrary to the plain meaning of the RPA, which does not address whether an employer may change the month for when the interest rate is calculated. The regulation was

---

[9]See § 1.417(e)-1(d)(10)(vi)(C).

[10]See § 1.417(e)-1(d)(10)(ii).

[11]Johnson & Johnson cites no authority for its argument that the regulations are not mandatory.

6

valid and mandatory for plans which changed the discount rates from the PBGC to the GATT rates.

III

The transition regulations only apply, however, if the plan amendment at issue reduces benefits in violation of the anti-cutback rule. We thus come to the central question of the case: whether Johnson & Johnson reduced any employees' benefits in violation of IRC § 411(d)(6). We first examine whether the benefits of the mandatory class members were protected by the rule. Johnson & Johnson argues that the mandatory group did not have an "accrued benefit" because only annual benefits, not lump sum distributions, fall within the meaning of accrued benefits.

The rule protects "accrued benefits," "early retirement benefits," and "optional forms of benefit." The IRC defines "accrued benefits" as those "determined under the plan and, except as provided in subsection (c)(3), expressed in the form of an annual benefit commencing at normal retirement age."[12] Section 411(c)(3) in turn states that if an accrued benefit is not determined as an annual benefit commencing at normal retirement age, the accrued benefit shall be the actuarial equivalent thereof.[13] This definition suggests that the "annual benefit"

---

[12]I.R.C. § 411(a)(7)(A).

[13]See § 411(c)(3) (1999); see also Constantino v. TRW, Inc., 773 F. Supp. 34, 41 (N.D. Ohio 1991) (construing parallel ERISA provision under 29 U.S.C. § 1054(c)(3)), aff'd in part, modified on other grounds, 13 F.3d 969 (6th Cir. 1994).

language is a yardstick for measuring the benefit, not an independent requirement for anti-cutback protection.

Johnson & Johnson relies on <u>Steiner Corporation Retirement Plan</u>, in which the Tenth Circuit held that a lump sum distribution was not an accrued benefit.[14]  In <u>Steiner</u>, however, the lump sum was an alternative to the plan's annual benefits.  The court was thus choosing not between exempting lump sums from the anti-cutback rule but rather between two protected categories of benefit: an accrued benefit or an optional form of benefit.[15]  We are not persuaded that employees subject to mandatory lump sum plans enjoy no statutory protection from cut-backs in their benefits.

The mandatory class members entitled to benefits under section 6.01(c) of the original plan were protected by the anti-cutback rule.  Because the original plan and the amendment had different requirements, however, not all of the mandatory class members would have received a lump sum benefit under section 6.01(c).  It is unclear from the record whether the higher rate was applied to employees who could have received 6.01(c) benefits.  One Johnson & Johnson employee, Garry Goldberg, testified in deposition that if the employees met the under-$80 requirement, they would be paid using whichever interest rate was more favorable to the employee.  An office memorandum also suggested that this rule was intended.

---

[14]See <u>Steiner Corp. Retirement Plan v. Johnson & Higgins</u>, 31 F.3d 935, 939 (10th Cir. 1994).

[15]See <u>Steiner</u>, 31 F.3d at 936, 940.

Because we lack any evidence as to whether this rule was carried out, we remand for further findings on this issue.

The mandatory class members who would not have been eligible for the lump sum distribution under 6.01(c) did not receive a reduction in benefits for purposes of IRC § 411(d)(6). A regulation then in effect provided that an employer could change the threshold for an involuntary lump sum distribution without violating the anti-cutback rule.[16] For those class members who were switched from an annual benefit to a lump sum amount, Johnson & Johnson need only have complied with the general interest rate regulation,[17] not the transition rule applicable to cutbacks.

We turn to the optional class members. The parties dispute into what category of benefit those employees' annual benefit fell for purposes of the anti-cutback rule. Even accepting Myers-Garrison's claim that the benefits were protected under the rule, the amendment did not reduce them. The optional members could have chosen to take their old annual benefit with an identical distribution. Instead, they opted for a new benefit. The anti-cutback rule does not regulate new benefits; as a commonsense matter, offering employees a new alternative does not amount to a decrease in their accrued benefits.

Myers-Garrison attempts to have all of the class members benefit from the interest rates required for the members entitled to a lump sum benefit under the original plan by relying upon a

---

[16]See Treas. Reg. § 1.411(d)-4, Q & A 2(b)(2)(v).

[17]See Treas. Reg. § 1.417(e)-1(d)(4)(i).

consistency rule in the Treasury regulations.  That rule requires that the time for determining the general interest rate must be determined in a consistent manner for all participants in the plan.[18]  We do not interpret this rule to require that all plan members must benefit from transition interest rates carved out for members who would otherwise suffer a reduction in benefits.  The transition rules make no reference to their applicability beyond the distributions protected by the anti-cutback rule.  Those class members who suffered no cutback under § 411(d)(6) cannot ride the coattails of the class members who did.

Johnson & Johnson's duty to follow the transition rules for changes to discount rates from the PBGC to GATT rates only extended to those members whose benefits would otherwise have been reduced in violation of IRC § 411(d)(6).  No such reduction occurred as to the optional class members or to the mandatory class members who would not have been eligible for a mandatory lump sum distribution under the original plan.  It is unclear from the record whether Johnson & Johnson complied with the transition rules regarding the remaining group: any class members who would otherwise have received a lump sum distribution.  We thus VACATE and REMAND for further proceedings regarding that issue.

VACATED AND REMANDED.

---

[18]See Treas. Reg. § 1.417(e)-1(d)(4)(i).