124 T.C. No. 12

UNITED STATES TAX COURT

CHARLES P. STEPNOWSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE AND HERCULES INCORPORATED,
Respondents

Docket No. 8383-03R.                    Filed April 26, 2005.

Hercules amended its defined benefit plan in 2001.
The amendment to the plan's lump-sum payment option
replaced the interest rate assumption that had
previously been used to calculate the present value of
a participant's accrued benefit with the annual
interest rate on 30-year Treasury securities.

Hercules filed a request for a determination that
the amended plan met all of the qualification
requirements that were in effect under sec. 401(a),
I.R.C.  P, as an interested party, sent a letter to the
IRS regarding Hercules' determination request.  P
asserted that the amendment to the plan's lump-sum
payment option violated the anti-cutback rule of sec.
411(d)(6), I.R.C.  The IRS issued a favorable
determination letter to Hercules.

P filed a Petition for Declaratory Judgment
(Retirement Plan) pursuant to sec. 7476(a), I.R.C.,

challenging RC's determination.  P also filed a Motion for an Order to Calendar for Trial and a Motion for Permission for Discovery with the Court.  The Court denied P's motions.

1.  Held:  P did not show good cause either to commence discovery in this case or for this case to be set for trial.  The case is to be decided solely on the administrative record.

2.  Held, further, respondent Commissioner did not err in determining that the amendment to the plan's lump-sum payment option did not violate the anti-cutback rule of sec. 411(d)(6), I.R.C.

Mervin M. Wilf, for petitioner.

Brian M. Pinheiro, for respondent Hercules Incorporated.

Peter J. Gavagan, for respondent Commissioner of Internal Revenue.

OPINION

COHEN, Judge:  Respondent Commissioner of Internal Revenue (respondent Commissioner) issued a favorable determination letter to respondent Hercules Incorporated (Hercules) in which respondent Commissioner determined that the Pension Plan of Hercules Incorporated, as amended (the amended plan), met the qualification requirements of section 401(a).  Charles P. Stepnowski, petitioner, filed a Petition for Declaratory Judgment (Retirement Plan) pursuant to section 7476(a) challenging respondent Commissioner's determination.  Hercules was joined as

party/respondent to this case by Order dated August 20, 2003. See Rule 215(a)(2).

The principal issue for decision is whether respondent Commissioner erred in determining that the amendment to the plan's lump-sum payment option did not violate the anti-cutback rule of section 411(d)(6).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

The parties have stipulated the administrative record. That record is incorporated herein by this reference. Petitioner's address was in Kennett Square, Pennsylvania, at the time that the Petition for Declaratory Judgment (Retirement Plan) was filed. Hercules maintained its principal office in Wilmington, Delaware, at the time that the Petition for Declaratory Judgment (Retirement Plan) was filed.

The Pension Plan of Hercules Incorporated (the plan) is a defined benefit plan as defined under the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829. The plan was established in 1913, and it uses the calendar year as its plan year. On or about February 12, 1996, the Internal Revenue Service (IRS) issued a favorable determination letter to

Hercules with respect to the plan. This determination letter was applicable to the amendments to the plan that were adopted on October 27, 1994.

Hercules made additional amendments to the plan during 2001. Hercules executed the amended plan on January 28, 2002. The amended plan's effective date was January 1, 2001. As of January 31, 2002, the amended plan had 31,301 participants.

Various "universal provisions" and three schedules of rights and benefits--Schedule A, Schedule B, and Schedule C--govern the amended plan. As relevant here, Article VII of Schedule B sets forth the payment provisions for those participants falling under that schedule of the amended plan. Paragraph D of Article VII provides that an eligible participant may elect to receive his or her plan benefits as a "51% Partial Cash Payment," pursuant to which the present value of 51 percent of the participant's accrued benefit is payable as a lump sum (lump-sum payment option). The remaining 49 percent of the participant's accrued benefit is payable in an annuity form.

Prior to amending the plan, Hercules used the published interest rates used by the Pension Benefit Guaranty Corp. (PBGC) to calculate an immediate annuity beginning on the first day of the first month of the calendar quarter of payment for purposes of calculating the present value of a participant's accrued benefit under the lump-sum payment option. As amended, however,

the lump-sum payment option states, in pertinent part, as

follows:

> Participants entitled to receive benefits under
> Article II, III, IV, or V of this Schedule may apply
> for a 51% partial cash payment in accordance with the
> following provisions:

1. A Participant may elect to receive in a single partial cash payment an amount equal to the present value equivalent of 51% of the monthly pension benefit that otherwise would be payable over the Participant's expected lifetime.  The amount shall be calculated using the factors set forth in Paragraph 4., below, applied in a uniform and consistent manner.  * * *

2. A married Participant applying for a 51% partial cash payment must present a written consent by his spouse to this form of benefit with such consent notarized.

    *    *    *    *    *    *    *

4. a. With respect to payments made on and after January 1, 2002, the payment shall be computed on the basis of the following factors:

    (1) the 1983 Group Annuity Mortality Table, using a blend of 50 percent male and 50 percent female described in Rev. Rul. 95-6 (1995-1 C.B. 80) (or such other mortality table as may be prescribed by the Treasury Secretary pursuant to its authority under Code section 417(e)(3)) * * *; and

    (2) the annual interest rate on 30-year Treasury securities as specified by the Commissioner of the Internal Revenue Service for the second calendar month prior to the calendar quarter that contains the benefit payment date (or such other rate as the Secretary of the Treasury may prescribe by regulation under section 417(e) of the Code) * * *

which rate shall remain stable for the entire calendar quarter.

b. With respect to payments made prior to January 1, 2002, the payment shall be computed on the basis of the actuarial life expectancy tables (1983 Group Annuity Mortality Table, using a blend of 50 percent male and 50 percent female factors described in Rev. Rul. 95-6 * * *) (or such other mortality table as may be prescribed by the Treasury Secretary pursuant to its authority under Code section 417(e)(3)), and PBGC interest rates to determine immediate annuity rates applicable on the first business day of the first month in the calendar quarter of payment. Notwithstanding the foregoing, with respect to payments made on or after January 1, 2000 and prior to January 1, 2002, the payment shall be computed on the basis of the assumptions set forth in Article VII.D.4a. or VII.D.4b., whichever produces the higher payment.

On or about February 15, 2002, Hercules filed a request with the IRS for a determination that the amended plan met all of the qualification requirements that were in effect under section 401(a). Hercules described its request in the following manner:

Specifically, pursuant to Revenue Procedure 2000-27, we request a "GUST II" letter with respect to all changes made by the Uruguay Round Agreements Act of 1994, the Uniform Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the Internal Revenue Service Restructuring and Reform Act of 1998 and the Community Renewal Tax Relief Act of 2000.

Included with Hercules' request were, among other documents, Form 5300, Application for Determination for Employee Benefit Plan; Schedule Q (Form 5300), Nondiscrimination Requirement; and

an executed copy of the amended plan.  Line 12a of Form 5300 asked the following question:  "Does any amendment to the plan reduce or eliminate any section 411(d)(6) protected benefit?"  In response to this question, Hercules checked the "No" box. Hercules completed the Form 5300 on or about January 31, 2002.

On or about March 19, 2002, petitioner, as an interested party, sent a letter to the IRS regarding the "Application for Determination Letter Submitted February 15, 2002 by Hercules Incorporated".  Petitioner made, in pertinent part, the following statements in this letter:

> I have been advised that the application for an advance determination letter was filed on February 15, 2002 pursuant to the "Notice To Eligible Employees Of Hercules Incorporated."
>
> The pension plan provides for the payment in a lump sum of the actuarial value of 51% of a participant's monthly pension benefit.  In 2001, Hercules amended its plan to provide that the lump-sum benefit will be computed based on the 30-year Treasury bond rate for service prior to the date of that amendment.  Prior to the 2001 amendment, the value was computed using the PBGC rate.  I have been informed that the use of the 30-year Treasury bond rate, instead of the PBGC rate, is an illegal cutback under Section 411(d)(6) of the Code and applicable regulations and rulings.  Accordingly, the pension plan does not satisfy the requirements as a qualified plan. Therefore, a favorable determination letter should not be issued until and unless the plan is changed to provide the anticutback protection required by the applicable regulations and rulings regarding the proper interest rate to be used in determining the actuarial equivalent value for service prior to the date of a proper amendment.

On or about November 6, 2002, an Employee Plans Specialist at the IRS sent a letter to Hercules informing it that she had been assigned to evaluate and review the determination letter application that it had submitted. On or about January 18, 2003, petitioner received a letter from the IRS that acknowledged the receipt of his comments concerning the request for determination that had been submitted by Hercules. On or about January 21, 2003, Hercules received a letter from the IRS informing it that the IRS had received comments from an interested party concerning the request for determination that had been submitted by Hercules.

On or about March 3, 2003, the IRS issued a favorable determination letter to Hercules with respect to the amended plan. This determination letter was applicable to the amendments that Hercules had executed on January 28, 2002. In this letter, the IRS stated that the changes that were made to the qualification requirements by the following public laws had been considered in reaching its determination: The Uruguay Round Agreements Act, Pub. L. 103-465, 108 Stat. 4809; the Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. 103-353, 108 Stat. 3149; the Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1755; the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 788; the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat.

685; and the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, 114 Stat. 2763A-587. The IRS sent a copy of this determination letter to petitioner.

After the pleadings were filed, petitioner filed a Motion for an Order to Calendar for Trial and a Motion for Permission for Discovery. Petitioner sought discovery and trial concerning his position that Hercules had falsely represented to the IRS that the 2001 plan amendments were not a "cutback" of benefits.

On July 15, 2004, the Court issued an Order that denied petitioner's Motion for an Order to Calendar for Trial and petitioner's Motion for Permission for Discovery. The Court's Order explained:

> Rule 217(a) states that the disposition of an action for declaratory judgment involving the qualification of a retirement plan "will ordinarily be made on the basis of the administrative record, as defined in Rule 210(b)(12). Only with the permission of the Court, upon good cause shown, will any party be permitted to introduce before the Court any evidence other than that presented before the Internal Revenue Service and contained in the administrative record as so defined." Only in very extraordinary circumstances will the Court permit either party to supplement the administrative record. See The Nationalist Movement v. Commissioner, T.C. Memo. 1992-698, affd. 37 F.3d 216 (5th Cir. 1994).

> Based upon the record as developed at the motions hearing, we are not persuaded that petitioner has shown good cause either to commence discovery in this case or for this case to be set for trial. In short, the legal issue in this case is whether a change in the interest rate that Hercules, Inc. uses to compute the present value of a lump-sum retirement benefit under its retirement plan constituted an impermissible "cut-back" within the meaning of section 411. Petitioner raised

this legal issue during the administrative process by submitting to respondent Commissioner of Internal Revenue a comment letter discussing the point. Respondent Commissioner of Internal Revenue considered petitioner's assertion; however, respondent Commissioner of Internal Revenue issued to respondent Hercules, Inc. a favorable determination letter.

The pleadings place the legal issue as summarized above squarely in dispute in this action. We do not see any need to supplement the administrative record. Consequently, in the absence of extraordinary circumstances that would otherwise justify discovery or a trial herein, we shall deny petitioner's motions.

## Discussion

Section 401(a) lists the requirements that must be met by a trust forming part of a pension or profit-sharing plan in order for that trust to be eligible for favorable tax treatment under the various sections of the Internal Revenue Code. Section 7476(a) confers jurisdiction on this Court to issue declaratory judgments as to the initial or continuing qualification of a retirement plan under section 401(a). Section 7476 "does not provide a broad grant of authority to the Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies." Simmons v. Commissioner, T.C. Memo. 1995-422; see also Stevens v. Commissioner, T.C. Memo. 1985-192; Wenzel v. Commissioner, T.C. Memo. 1982-595, affd. 707 F.2d 694 (2d Cir. 1983). Rather, in a declaratory judgment action under section 7476, we must decide whether the Commissioner, in making a determination as to the

initial or continuing qualification of a retirement plan under section 401(a), properly applied the law to the facts presented in the request for such determination. Thompson v. Commissioner, 71 T.C. 32, 36-37 (1978); see H. Rept. 93-807, at 108 (1974), 1974-3 C.B. (Supp.) 236, 343; S. Rept. 93-383, at 114 (1973), 1974-3 C.B. (Supp.) 80, 193; see also Wenzel v. Commissioner, 707 F.2d 694, 696 (2d Cir. 1983), affg. T.C. Memo. 1982-595; McManus v. Commissioner, 93 T.C. 79, 87 (1989).

As a preliminary matter, we address petitioner's contention that the Court should reconsider its Order dated July 15, 2004, and grant petitioner's Motion for an Order to Calendar for Trial and petitioner's Motion for Permission for Discovery. Other than making several conclusory statements as to the necessity of "getting the facts", petitioner has not discussed how discovery and trial will assist the Court in reaching a decision on the question of law that is before it in this case, i.e., whether respondent Commissioner erred in determining that the amendment to the plan's lump-sum payment option did not violate the anti-cutback rule of section 411(d)(6). Rather, petitioner asserts that Hercules misrepresented to the IRS the effect of the plan amendment. Respondent Commissioner has maintained throughout these proceedings that (1) respondent Commissioner was aware of the amendment to the lump-sum payment option at the time that the favorable determination letter was issued to Hercules and (2) the

issue to be decided is whether respondent Commissioner correctly interpreted and applied the law in determining that the amendment did not violate the anti-cutback rule of section 411(d)(6).

Petitioner argues that, because Rule 217(a) does not make an explicit reference to declaratory judgment actions involving the continuing qualification of a retirement plan, the "good cause" provision of that Rule must apply only to declaratory judgment actions involving the initial qualification of a retirement plan. Rule 217(a) provides, in pertinent part, as follows:

> (a) General:  Disposition of an action for declaratory judgment which involves the initial qualification of a retirement plan * * * will ordinarily be made on the basis of the administrative record, as defined in Rule 210(b)(12).  Only with the permission of the Court, upon good cause shown, will any party be permitted to introduce before the Court any evidence other than that presented before the Internal Revenue Service and contained in the administrative record as so defined.  * * *

By its terms, Rule 217(a) does not expressly preclude discovery or introduction of extrinsic evidence in a declaratory judgment action involving the continuing qualification of a retirement plan.  Nonetheless, to permit extrinsic evidence, other than that present in the administrative record, in such an action would convert the declaratory judgment proceeding to a judicial trial de novo.  See Tamko Asphalt Prods., Inc. v. Commissioner, 71 T.C. 824, 837 (1979), affd. 658 F.2d 735 (10th Cir. 1981); Houston Lawyer Referral Serv., Inc. v. Commissioner, 69 T.C. 570, 577 (1978); see also The Nationalist Movement v.

Commissioner, 37 F.3d 216, 219 (5th Cir. 1994), affg. 102 T.C. 558 (1994) and T.C. Memo. 1992-698. The legislative history of section 7476 makes clear that Congress did not expect the Court to conduct a trial de novo in declaratory judgment actions arising under that section, no matter whether that action arose with respect to the initial qualification or the continuing qualification of a retirement plan. See Tamko Asphalt Prods., Inc. v. Commissioner, 658 F.2d 735, 738-739 (10th Cir. 1981), affg. 71 T.C. 824 (1979); H. Rept. 93-807, at 108 (1974), 1974-3 C.B. (Supp.) 236, 343; S. Rept. 93-383, at 114 (1973), 1974-3 C.B. (Supp.) 80, 193; see also Wenzel v. Commissioner, 707 F.2d at 696. Therefore, discovery or introduction of extrinsic evidence in such cases is inconsistent with the legislative intent that such cases be resolved without a trial based solely on the materials contained in the administrative record. See Dr. Erol Bastug, Inc. v. Commissioner, T.C. Memo. 1989-262 ("The rule of law cited in Houston Lawyer Referral and Tamko Asphalt is predicated upon the legislative concern that the Court not bypass the administrative determination procedure without good cause."); see also Note to Rule 217(a), 68 T.C. 1048 (1977); Prefatory Note to amendments to this Court's Rules in respect of declaratory judgments under section 7476, 64 T.C. 1177-1179 (1975). Consistent with this legislative intent, the Court has previously held that it will not permit the administrative record to be

supplemented in declaratory judgment actions involving the qualification of a retirement plan unless very unusual circumstances exist and good cause has been shown. See, e.g., Halliburton Co. v. Commissioner, T.C. Memo. 1992-533 (denying the Commissioner's motion to compel discovery in a declaratory judgment proceeding relating to the partial termination of a retirement plan); Dr. Erol Bastug, Inc. v. Commissioner, supra (denying the taxpayer's motion to calendar for trial in a declaratory judgment proceeding relating to the initial qualification of a retirement plan); cf. Tamko Asphalt Prods., Inc. v. Commissioner, 71 T.C. at 837 (upholding the Court's earlier refusal to grant the taxpayer's request for a trial in a declaratory judgment proceeding relating to the initial qualification of a retirement plan). We see no reason to deviate from the Court's past practices in this case. Only in very unusual circumstances and upon good cause shown will the Court permit the administrative record to be supplemented in declaratory judgment actions involving the initial or continuing qualification of a retirement plan.

In the Court's Order of July 15, 2004, we concluded that petitioner had not shown good cause either to commence discovery in this case or for this case to be set for trial. There is no reason to change the analysis or the result reached in that Order. In particular, we emphasize that the issue in this case

is a legal one, and neither discovery nor extrinsic evidence is necessary or appropriate for its decision. Petitioner's asserted purpose for discovery is simply a disagreement with the position taken by Hercules with respect to the effect of the 2001 plan amendment.

We now turn to the question of whether respondent Commissioner erred in issuing a favorable determination letter to Hercules. As noted above, section 401(a) lists the requirements that must be met by a trust forming part of a pension or profit-sharing plan in order for that trust to be eligible for favorable tax treatment under the various sections of the Internal Revenue Code. Under section 401(a)(7), a trust shall not constitute a qualified trust unless the retirement plan of which such trust is a part satisfies the minimum vesting standards of section 411. Under section 411(a), a retirement plan must provide that, inter alia, the requirements of section 411(a)(11) are met. Section 411(a)(11), as amended by the Uruguay Round Agreements Act, Pub. L. 103-465, sec. 767(a)(1), 108 Stat. 5038, provides that, if the present value of a participant's nonforfeitable accrued benefit, as determined under section 417(e)(3), exceeds a specified dollar amount, the plan must provide that such benefit may not be immediately distributed without the participant's consent. See sec. 411(a)(11)(A) and (B); see also sec. 1.411(a)-11(a), (d), Income Tax Regs.

In the case of a defined benefit plan, the term "accrued benefit" means the employee's accrued benefit determined under the plan and expressed in the form of an annual benefit commencing at normal retirement age. Sec. 411(a)(7)(A)(i); see also sec. 1.411(a)-7(a)(1), Income Tax Regs. More generally, an accrued benefit represents the progressively increasing interest in a retirement benefit that an employee earns each year, under a formula that is provided in the plan. Bd. of Trs. of the Sheet Metal Workers' Natl. Pension Fund v. Commissioner, 117 T.C. 220, 228 (2001), affd. 318 F.3d 599 (4th Cir. 2003); see also Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan, 854 F.2d 1516, 1524 (3d Cir. 1988).

Under section 401(a)(11), a trust forming part of a defined benefit plan will not constitute a qualified trust unless, inter alia, the accrued benefit payable to a vested participant is provided in the form of a qualified joint and survivor annuity (QJSA). See sec. 401(a)(11)(A) and (B). Section 417 provides special rules and definitions for purposes of applying section 401(a)(11). Sec. 401(a)(11)(F).

Section 417(e) provides rules for "cash-outs" (i.e., lump-sum payments) of a participant's QJSA. If the present value of a participant's QJSA exceeds the amount that can be distributed without the participant's consent under section 411(a)(11), section 417(e)(2) provides that the participant and the

participant's spouse must consent in writing before the plan may distribute the present value of the participant's QJSA. Under section 417(e)(3), as amended by the Uruguay Round Agreements Act, Pub. L. 103-465, sec. 767(a)(2), 108 Stat. 5038, the present value of a participant's QJSA shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate. See also sec. 1.417(e)-1(d)(1), Income Tax Regs. Under section 417(e)(3)(A)(ii)(II), the term "applicable interest rate" means the annual interest rate on 30-year Treasury securities for the month before the date of distribution or such other time as the Secretary may by regulations prescribe. See also sec. 1.417(e)-1(d)(3), Income Tax Regs. Prior to its amendment by the Uruguay Round Agreements Act, section 417(e)(3) required retirement plans to calculate the present value of a participant's QJSA using an interest rate assumption based on the rate that would be used (as of the date of distribution) by the PBGC for purposes of determining the present value of a lump-sum distribution on plan termination (PBGC interest rate). Section 417(e)(3), as amended, is effective for plan years beginning after December 31, 1994. Uruguay Round Agreements Act, Pub. L. 103-465, sec. 767(d)(1), 108 Stat. 5040.

The amendment to section 417(e)(3) offered a financial benefit to sponsors of defined benefit plans by allowing them to

use a higher discount rate when calculating the present value of a participant's accrued benefit.  See <u>Myers-Garrison v. Johnson & Johnson</u>, 210 F.3d 425, 428 (5th Cir. 2000).  Because the use of a higher discount rate results in a lower present value for a participant's accrued benefit, the question that arises is whether that reduction in present value violates the anti-cutback rule of section 411(d)(6).  That section provides, in pertinent part, as follows:

>    (6) Accrued benefit not to be decreased by amendment.--
>
>        (A) In general.--A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan, other than an amendment described in section 412(c)(8), or section 4281 of the Employee Retirement Income Security Act of 1974.
>
>        (B) Treatment of certain plan amendments.-- For purposes of subparagraph (A), a plan amendment which has the effect of--
>
>            (i) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
>
>            (ii) eliminating an optional form of benefit,
>
>        with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.  In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.  The Secretary shall by regulations provide that this subparagraph shall not apply to any plan amendment which reduces or eliminates benefits or subsidies

which create significant burdens or complexities for the plan and plan participants, unless such amendment adversely affects the rights of any participant in a more than de minimis manner.  The Secretary may by regulations provide that this subparagraph shall not apply to a plan amendment described in clause (ii) (other than a plan amendment having an effect described in clause (i)).

The Uruguay Round Agreements Act, Pub. L. 103-465, sec. 767(d)(2), 108 Stat. 5040, provides that a participant's accrued benefit is not considered to be reduced in violation of section 411(d)(6) merely because the benefit is determined in accordance with the applicable interest rate under section 417(e)(3)(A), i.e., the annual interest rate on 30-year Treasury securities. Section 1.417(e)-1(d)(10), Income Tax Regs., explains the scope of this relief from the anti-cutback rule of section 411(d)(6). See T.D. 8768, 1998-1 C.B. 1027, 1029-1030.  Section 1.417(e)-1(d)(10)(i), Income Tax Regs., provides the general rule that a plan amendment that changes the interest rate, the time for determining the interest rate, or the mortality assumptions used for the purposes described in section 1.417(e)-1(d)(1), Income Tax Regs. (relating to the calculation of the present value of a participant's accrued benefit), is subject to section 411(d)(6).  Subdivisions (ii) through (v) of section 1.417(e)-1(d)(10), Income Tax Regs., provide safe harbors from the general rule of section 1.417(e)-1(d)(10)(i), Income Tax

Regs.  As relevant here, section 1.417(e)-1(d)(10)(iv), Income

Tax Regs., provides as follows:

> (iv) <u>Section 411(d)(6) relief for plan amendments pursuant to changes to section 417 made by RPA '94 providing for prior determination date or up to two months earlier</u>.  Notwithstanding the general rule of paragraph (d)(10)(i) of this section, except as provided in paragraph (d)(10)(vi)(B) of this section [relating to the replacement of a non-PBGC interest rate], a participant's accrued benefit is not considered to be reduced in violation of section 411(d)(6) merely because of a plan amendment that changes any interest rate or mortality assumption used to calculate the present value of a participant's benefit under the plan, if the following conditions are satisfied--
>
> (A) The amendment replaces the PBGC interest rate (or an interest rate or rates based on the PBGC interest rate) as the interest rate used under the plan in determining the present value of a participant's benefit under this paragraph (d); and
>
> (B) After the amendment is effective, the present value of a participant's benefit under the plan cannot be less than the amount calculated using the applicable mortality table and the applicable interest rate, but only if the applicable interest rate is the annual interest rate on 30-year Treasury securities for the calendar month that contains the date as of which the PBGC interest rate (or an interest rate or rates based on the PBGC interest rate) was determined immediately before the amendment, or for one of the two calendar months immediately preceding such month.

Hercules' amendment to the lump-sum payment option fits

squarely within the safe harbor provided by section

1.417(e)-1(d)(10)(iv), Income Tax Regs.  Specifically, the

amendment to the lump-sum payment option (1) replaces an interest

rate based on the PBGC interest rate; (2) provides that the

present value of a participant's accrued benefit shall be no less

than the amount calculated using the applicable mortality table and the applicable interest rate; and (3) provides that the applicable interest rate is the annual interest rate on 30-year Treasury securities for the second calendar month preceding the calendar month in which the PBGC interest rate would have otherwise been determined before the amendment. (The amendment to the lump-sum payment option also satisfies the requirements of section 1.417(e)-1(d)(4), Income Tax Regs., by (1) providing for a calendar quarter "stability period" with respect to the applicable interest rate; (2) specifying that the "lookback month" for determining the applicable interest rate is the second calendar month preceding the stability period; and (3) applying the time and method for determining the applicable interest rate uniformly to all of the participants falling under Schedule B of the amended plan. See sec. 1.417(e)-1(d)(4)(i) through (iii), Income Tax Regs.)

Notwithstanding the amendment's compliance with the safe harbor provided by section 1.417(e)-1(d)(10)(iv), Income Tax Regs., petitioner contends that the amended plan violates the anti-cutback rule of section 411(d)(6) because the change in the interest rate assumption used to calculate the present value of a participant's accrued benefit under the lump-sum payment option occurred after the deadline specified in the following portion of section 1.417(e)-1(d)(10)(i), Income Tax Regs.:

[A] plan amendment that changes the interest rate or the mortality assumptions used for the purposes described in paragraph (d)(1) of this section merely to eliminate use of the interest rate described in paragraph (d)(3) or paragraph (d)(9) of this section, or the applicable mortality table, <u>with respect to a distribution form described in paragraph (d)(6) of this section</u>, for distributions with annuity starting dates occurring after a specified date that is after the amendment is adopted, does not violate the requirements of section 411(d)(6) if the amendment is adopted on or before the last day of the last plan year ending before January 1, 2000. [Emphasis added.]

As discussed below, petitioner's argument is unpersuasive.

According to the portion of section 1.417(e)-1(d)(10)(i), Income Tax Regs., upon which petitioner relies, only those plan amendments made with respect to distribution forms described in section 1.417(e)-1(d)(6), Income Tax Regs., are subject to the deadline specified in section 1.417(e)-1(d)(10)(i), Income Tax Regs. Section 1.417(e)-1(d)(6), Income Tax Regs., provides as follows:

(6) <u>Exceptions</u>. This paragraph (d) (other than the provisions relating to section 411(d)(6) requirements in paragraph (d)(10) of this section) does not apply to the amount of a distribution paid in the form of an annual benefit that--

(i) Does not decrease during the life of the participant, or, in the case of a QPSA [qualified preretirement survivor annuity], the life of the participant's spouse; or

(ii) Decreases during the life of the participant merely because of--

(A) The death of the survivor annuitant (but only if the reduction is to a level not below 50% of the annual benefit payable before the death of the survivor annuitant); or

         (B) The cessation or reduction of Social
Security supplements or qualified disability benefits
(as defined in section 411(a)(9)).

Petitioner has not considered whether the amendment to the interest rate assumption was made with respect to a distribution form described in section 1.417(e)-1(d)(6), Income Tax Regs. In particular, petitioner has not argued that the lump-sum payment option provides for a "distribution paid in the form of an annual benefit" described in section 1.417(e)-1(d)(6), Income Tax Regs. Even if petitioner had done so, such an argument would not persuade us, because a lump-sum payment is not a distribution form described in section 1.417(e)-1(d)(6), Income Tax Regs. Rather, section 1.417(e)-1(d)(6), Income Tax Regs., describes distributions that are paid in certain annuity forms. This conclusion is supported by the preamble accompanying the issuance of the final regulations at section 1.417(e)-1(d), Income Tax Regs. See T.D. 8768, 1998-1 C.B. 1027; see also Armco, Inc. v. Commissioner, 87 T.C. 865, 868 (1986) ("A preamble will frequently express the intended effect of some part of a regulation. As a statement of intent that represents an institutional viewpoint, such a document might be helpful in interpreting an ambiguity in a regulation."). The preamble to those final regulations states, in pertinent part, as follows:

    Exceptions from the requirements of section 417(e)(3)

        The temporary regulations provided an exception
from the requirements of section 417(e)(3) and sec.

1.417(e)-1T(d) for the amount of a distribution under a nondecreasing annuity payable for a period not less than the life of the participant or, in the case of a QPSA, the life of the surviving spouse.  For purposes of this exception, a nondecreasing annuity included a QJSA, a QPSA, and an annuity that decreased merely because of the cessation or reduction of Social Security supplements or qualified disability payments (as defined in section 411(a)(9)).  This exception was identical to the exception provided under former final regulations.  Several commentators pointed out that this exception did not cover several other types of annuity forms of distribution that were nondecreasing during the life of the participant, and suggested that the regulations be changed to provide additional exceptions for these additional annuity forms of distribution.

The IRS and Treasury have determined that it is appropriate to provide additional exceptions for these benefit forms.  Accordingly, under the final regulations, section 417(e)(3) and sec. 1.417(e)-1(d) do not apply to the amount of a distribution paid in the form of an annual benefit that does not decrease during the life of the participant, or, in the case of a QPSA, the life of the participant's spouse; or that decreases during the life of the participant merely because of the death of the survivor annuitant (but only if the reduction is to a level not below 50% of the annual benefit payable before the death of the survivor annuitant) or merely because of the cessation or reduction of Social Security supplements or qualified disability benefits.  * * *  [T.D. 8768, 1998-1 C.B. 1027, 1028.]

This conclusion is further supported by the commonsense notion that, because section 417(e) specifically deals with the calculation of the present value of a participant's accrued benefit for purposes of determining the amount of a lump-sum payment to that participant, lump-sum payments would not be excepted from the present value requirements of section 1.417(e)-1(d), Income Tax Regs.  Therefore, because the lump-sum

payment option does not provide for a distribution form described in section 1.417(e)-1(d)(6), Income Tax Regs., the deadline specified in section 1.417(e)-1(d)(10)(i), Income Tax Regs., is not applicable to the amendment at issue in this case.

While there is no deadline specified in section 1.417(e)-1, Income Tax Regs., for adopting plan amendments to which the present value requirements of section 1.417(e)-1(d), Income Tax Regs., actually apply, the Commissioner has issued a series of revenue procedures in which the deadline to adopt such plan amendments was set and then extended.  The first of these revenue procedures was Rev. Proc. 99-23, 1999-1 C.B. 920.  Rev. Proc. 99-23, supra, provides, in pertinent part, as follows:

SECTION 1.  PURPOSE

.01  This revenue procedure extends until the last day of the first plan year beginning on or after January 1, 2000, the remedial amendment period under sec. 401(b) of the Code for amending plans that are qualified under sec. 401(a) or sec. 403(a) for changes made by the Small Business Job Protection Act of 1996, Pub. L. 104-188 ("SBJPA") and for other recent changes in the law.  * * *

*    *    *    *    *    *    *

.03  This revenue procedure also provides that the extension of the remedial amendment period applies to the time for adopting amendments of defined benefit plans to provide that benefits will be determined in accordance with the applicable interest rate rules and applicable mortality table rules of sec. 1.417(e)-1(d) of the Income Tax Regulations.  However, such a plan amendment must provide that, with respect to distributions with annuity starting dates that are on or after the effective date of the amendment but before the adoption date of the amendment, the distribution

will be the greater of the amount that would be determined under the plan without regard to the amendment and the amount determined under the plan with regard to the amendment.

* * * * * * *

SECTION 2.   BACKGROUND

* * * * * * *

.07  Under sec. 417(e)(3), as amended by sec. 767 of the Retirement Protection Act of 1994 ("RPA 94," which is part of GATT), and sec. 1.417(e)-1(d), a defined benefit plan must provide that the present value of any accrued benefit and the amount of any distribution must not be less than the amount calculated using the applicable interest rate described in sec. 1.417(e)-1(d)(3) and the applicable mortality table described in sec. 1.417(e)-1(d)(2).  * * * Section 767 of RPA 94 and sec. 1.417(e)-1(d) are generally effective for distributions with annuity starting dates in plan years beginning after December 31, 1994.  However, sec. 417(e)(3)(B) provides a  transition rule for plans adopted and in effect as of December 7, 1994 ("pre-GATT plans").  In general, under this rule, the present value of a distribution from a pre-GATT plan that is made before the earlier of (i) the first plan year beginning after December 31, 1999, or (ii) the later of the adoption or effective date of a plan amendment applying the changes made to sec. 417(e)(3) to the plan is to be determined under the plan's pre-GATT terms.  Thus, for pre-GATT plans, amendments applying the changes to sec. 417(e)(3) to plan years beginning before January 1, 2000, could not be adopted retroactively, and these plans could not be operated in accordance with the changes prior to plan amendment.

.08  Section 767(d)(2) of RPA 94 provides that a participant's accrued benefit is not considered to be reduced in violation of sec. 411(d)(6) merely because the benefit is determined in accordance with the applicable interest rate rules and the applicable mortality table rules of sec. 417(e)(3)(A), as amended by RPA 94.  Section 1.417(e)-1(d)(10) explains the scope of relief from the requirements of sec. 411(d)(6).  A plan amendment to comply with the

applicable interest rate rules and the applicable mortality table rules of sec. 417(e)(3)(A), as amended by RPA 94, must apply to all distributions with annuity starting dates that occur in plan years beginning after December 31, 1999.

.09  Section 1.401(b)-1T(c)(3) authorizes the Commissioner to impose limits and provide additional rules regarding the amendments that may be made within the remedial amendment period with respect to a plan provision that has been designated by the Commissioner as a disqualifying provision under sec. 401(b).

*     *     *     *     *     *     *

SECTION 3.  EXTENSION OF REMEDIAL AMENDMENT PERIOD

.01  The remedial amendment period described in Rev. Proc. 97-41 and Rev. Proc. 98-14, hereafter referred to as the "GUST" remedial amendment period, is, in the case of nongovernmental plans, hereby extended to the last day of the first plan year beginning on or after January 1, 2000.  * * *

*     *     *     *     *     *     *

.06  Finally, the extension of the remedial amendment period also applies to the time for adopting amendments of defined benefit plans to provide that benefits will be determined in accordance with the applicable interest rate rules and applicable mortality table rules of sec. 1.417(e)-1(d).  Thus, such a plan amendment may be adopted at any time up to the last day of the extended remedial amendment period, provided the amendment is made effective for distributions with annuity starting dates occurring in plan years beginning after December 31, 1999.  However, pursuant to the Commissioner's authority in sec. 1.401(b)-1T(c)(3), if such a plan amendment is adopted after the last day of the last plan year beginning before January 1, 2000, the amendment must provide that, with respect to distributions with annuity starting dates that are after the last day of that plan year but before the date of adoption of the amendment, the distribution will be the greater of the amount that would be determined under the plan without regard to the amendment and the amount determined under the plan

with regard to the amendment.  [Rev. Proc. 99-23, 1999-1 C.B. at 920-923.]

Rev. Proc. 99-23, <u>supra</u>, was subsequently modified by Rev. Proc. 2000-27, 2000-1 C.B. 1272.  Rev. Proc. 2000-27, <u>supra</u>, provides, in pertinent part, as follows:

SECTION 1.  PURPOSE

.01  * * * This [revenue] procedure * * * extends until the last day of the first plan year beginning on or after January 1, 2001, the remedial amendment period under sec. 401(b) of the Code for amending plans for GUST * * *

.02  The term "GUST" refers to the following:

1  the Uruguay Round Agreements Act, Pub. L. 103-465 ("GATT");

2  the Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. 103-353 ("USERRA");

3  SBJPA;

4  the Taxpayer Relief Act of 1997, Pub. L. 105-34 ("TRA '97"); and

5  the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206 ("RRA '98").

SECTION 2.  BACKGROUND

*    *    *    *    *    *    *

.03  Under sec. 401(b), plan sponsors have a remedial amendment period in which to adopt GUST plan amendments.  Rev. Proc. 99-23, 1999-16 I.R.B. 5, provides that the GUST remedial amendment period for nongovernmental plans ends on the last day of the first plan year beginning on or after January 1, 2000.  * * * The end of the GUST remedial amendment period is the deadline for making all GUST plan amendments, including plan amendments reflecting the repeal of sec. 415(e)

and other plan amendments specifically enumerated in Rev. Proc. 99-23.  * * *

\* \* \* \* \* \* \*

SECTION 4.  EXTENSION OF THE REMEDIAL AMENDMENT PERIOD

.01  The GUST remedial amendment period for nongovernmental plans is extended to the last day of the first plan year beginning on or after January 1, 2001.  * * *

.02  In general, all plan provisions that either cause a plan to fail to satisfy the qualification requirements of the Code because of changes to those requirements made by GUST or are integral to a qualification requirement changed by GUST are disqualifying provisions under sec. 1.401(b)-1(b) of the regulations.  Thus, this extension of the GUST remedial amendment period applies to all GUST plan amendments, including all those specifically enumerated in Rev. Proc. 99-23.  * * *  [Rev. Proc. 2000-27, 2000-1 C.B. at 1272-1273.]

Rev. Proc. 2000-27, supra, was subsequently modified by Rev. Proc. 2001-55, 2001-2 C.B. 552.  Rev. Proc. 2001-55, supra, provides, in pertinent part, as follows:

SECTION 1.  PURPOSE

This revenue procedure extends the GUST remedial amendment period under sec. 401(b) of the Code for qualified retirement plans.  First, the revenue procedure extends the GUST remedial amendment period for all plans to February 28, 2002, if the period would otherwise end before then.  * * *

SECTION 2.  BACKGROUND

.01  Under sec. 401(b), plan sponsors have a remedial amendment period in which to adopt plan amendments for GUST.  The end of the GUST remedial amendment period is the deadline for making all GUST plan amendments and other plan amendments specifically enumerated in Rev. Proc. 99-23 (1999-1 C.B. 920). * * *

.02  Rev. Proc. 2000-27 (2000-26 I.R.B. 1272) provides that the GUST remedial amendment period for nongovernmental plans ends on the last day of the first plan year beginning on or after January 1, 2001.  * * *

\* \* \* \* \* \* \*

.05  Section 1.401(b)-1(f) of the Income Tax Regulations provides that, at his discretion, the Commissioner may extend the remedial amendment period or may allow a particular plan to be amended after the expiration of its remedial amendment period and any applicable extension of such period.  In determining whether such an extension will be granted, the Commissioner shall consider, among other factors, whether substantial hardship to the employer would result if such an extension were not granted, whether such an extension is in the best interest of plan participants, and whether the granting of the extension is adverse to the interests of the government.

SECTION 3.  GENERAL EXTENSION OF REMEDIAL AMENDMENT PERIOD TO FEBRUARY 28, 2002

.01  The GUST remedial amendment period is extended to February 28, 2002, if the period would otherwise end before then.  This extension applies to all GUST plan amendments, including all those plan amendments specifically enumerated in Rev. Proc. 99-23. * * *  [Rev. Proc. 2001-55, 2001-2 C.B. at 552-553; fn. ref. omitted.]

With the publication of Rev. Proc. 2001-55, supra, the Commissioner extended the deadline for plan sponsors to adopt the amendments enumerated in Rev. Proc. 99-23, 1999-1 C.B. 920, until February 28, 2002.  The amendments enumerated in Rev. Proc. 99-23, supra, included amendments of defined benefit plans to provide that the present value of a participant's accrued benefit would be determined in accordance with the applicable interest rate rules and applicable mortality table rules of section

1.417(e)-1(d), Income Tax Regs.  Thus, it follows that plan sponsors had until February 28, 2002, to adopt plan amendments falling under the safe harbors provided by section 1.417(e)-1(d)(10)(ii) through (v), Income Tax Regs.  Accordingly, Hercules had until February 28, 2002, to adopt amendments to the lump-sum payment option in accordance with the safe harbor provided by section 1.417(e)-1(d)(10)(iv), Income Tax Regs.

In an effort to avoid this conclusion, petitioner contends that, because "the continuing use of the PBGC interest rate cannot be a 'disqualifying provision'" within the meaning of the Treasury regulations promulgated under section 401(b), "the series of Revenue Procedures relating to the remedial amendment period with respect to the extensive GUST I or GUST II amendments did not extend the period during which Hercules could amend the plan to provide that the 30-year Treasury bond rate would be used".  As discussed below, petitioner's contention is unpersuasive.

Section 1.401(b)-1, Income Tax Regs., explains the operation of section 401(b) and provides, in pertinent part, as follows:

> (a) <u>General rule</u>.  Under section 401(b) a * * *
> pension * * * plan which does not satisfy the
> requirements of section 401(a) on any day solely as a
> result of a disqualifying provision * * * shall be
> considered to have satisfied such requirements on such
> date if, on or before the last day of the remedial
> amendment period * * * with respect to such
> disqualifying provision, all provisions of the plan
> which are necessary to satisfy all requirements of
> * * * [section] 401(a) * * * are in effect and have

been made effective for all purposes for the whole of such period. * * *

(b) <u>Disqualifying provisions</u>. For purposes of this section, with respect to a plan described in paragraph (a) of this section, the term "disqualifying provision" means:

* * * * * * *

(3) A plan provision designated by the Commissioner, at the Commissioner's discretion, as a disqualifying provision that either--

(i) Results in the failure of the plan to satisfy the qualification requirements of the Internal Revenue Code by reason of a change in those requirements; or

(ii) Is integral to a qualification requirement of the Internal Revenue Code that has been changed.

(c) <u>Special rules applicable to disqualifying provisions</u>--

* * * * * * *

(2) <u>Method of designating disqualifying provisions</u>. The Commissioner may designate a plan provision as a disqualifying provision pursuant to paragraph (b)(3) of this section only in revenue rulings, notices, and other guidance published in the Internal Revenue Bulletin. * * *

(3) <u>Authority to impose limitations</u>. In the case of a provision that has been designated as a disqualifying provision by the Commissioner pursuant to paragraph (b)(3) of this section, the Commissioner may impose limits and provide additional rules regarding the amendments that may be made with respect to that disqualifying provision during the remedial amendment period. The Commissioner may provide guidance in revenue rulings, notices, and other guidance published in the Internal Revenue Bulletin. * * *

Paragraphs (b)(3), (c)(2), and (c)(3) of section 1.401(b)-1, Income Tax Regs., were promulgated as temporary regulations on August 1, 1997, and adopted without substantive change as final regulations on February 4, 2000.  See T.D. 8871, 2000-1 C.B. 641; T.D. 8727, 1997-2 C.B. 47.

Under section 1.401(b)-1(b)(3), Income Tax Regs., the Commissioner has discretion to designate certain plan provisions as disqualifying provisions.  As implied by Rev. Proc. 99-23, sec. 3.06, 1999-1 C.B. at 923, and Rev. Proc. 2000-27, sec. 4.02, 2000-1 C.B. at 1273, the Commissioner designated plan provisions providing for the determination of the present value of a participant's accrued benefit as disqualifying provisions because they were integral to a qualification requirement that had been changed.  Consequently, the Commissioner subjected these plan provisions to the remedial amendment period set forth in those revenue procedures.  Because the lump-sum payment option is such a plan provision, it was subject to the remedial amendment period.  Therefore, petitioner cannot avoid the conclusion that Hercules had until February 28, 2002, to adopt amendments to the lump-sum payment option in accordance with the safe harbor provided by section 1.417(e)-1(d)(10)(iv), Income Tax Regs.

In addition to subjecting plan provisions providing for the determination of the present value of a participant's accrued benefit to the remedial amendment period, the Commissioner also

exercised the Commissioner's authority under section 1.401(b)-1(c)(3), Income Tax Regs., in Rev. Proc. 99-23, supra, by establishing an additional requirement for plan sponsors that adopted amendments to those plan provisions in plan years beginning after December 31, 1999. Specifically, Rev. Proc. 99-23, sec. 3.06, 1999-1 C.B. at 923, added the following requirement: If the sponsor of a defined benefit plan, which uses the calendar year as its plan year, adopted an amendment to a plan provision providing for the determination of the present value of a participant's accrued benefit on or after January 1, 2000, the amendment had to be made effective for distributions with annuity starting dates occurring on or after January 1, 2000, and had to provide that, with respect to distributions with annuity starting dates occurring on or after January 1, 2000, but before the date of the adoption of the amendment, the amount of any such distributions would be the greater of the amount determined under the plan without regard to the amendment and the amount determined under the plan with regard to the amendment.

As discussed above, the amendment that Hercules made to the lump-sum payment option falls squarely within the safe harbor provided by section 1.417(e)-1(d)(10)(iv), Income Tax Regs. Because Hercules amended the lump-sum payment option in 2001, the amendment occurred before the February 28, 2002, deadline to adopt such plan amendments had passed. Furthermore, the 2001

amendment to the lump-sum payment option satisfied the additional requirement established by the Commissioner in Rev. Proc. 99-23, sec. 3.06, 1999-1 C.B. at 923, by offering the greater of the accrued benefit calculated using the PBGC interest rate or the annual interest rate on 30-year Treasury securities for payments occurring on and after January 1, 2000, but before January 1, 2002.

In sum, we conclude that respondent Commissioner did not err in determining that the amendment to the plan's lump-sum payment option did not violate the anti-cutback rule of section 411(d)(6).

We have considered the arguments of the parties that were not specifically addressed in this opinion. Those arguments are either without merit or irrelevant to our decision.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondents.</u>